JOHN T. CARPENTER

*v.*

MARY VAN OLINDER *et al.*

*Filed at Ottawa January 25, 1889.*

1. WILLS—*words limiting to a life estate in the first taker—how far controlled by a devise of the remainder to his "heirs"—the rule in Shelly's case.* Where a devise assumes to give a life estate, only, to the first taker, and the remainder to the "heirs" of such devisee, the person designated in the will as a life tenant merely, will take an estate in fee; and the language of the devise, or other parts of the will showing an intention to give only a life estate, will not control.

2. Although a testator, in making a devise of real estate, may have intended that the devisee shall take only an estate for life, yet if he afterwards gives an estate to the heirs of the life tenant or to the heirs of his body, the law will contravene his intention, and vest in the devisee the remainder of the estate or the fee.

3. Neither the express declaration that the ancestor shall have an estate for his life, and no longer, nor that he shall have only an estate for life in the premises, and that after his decease it shall go to the heirs of his body, and in default of such heirs, vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of the testator, nor that the ancestor shall be tenant for his life and no longer, and that it shall not be in his power to sell, dispose of or make away with any part of the premises, will change the word "heirs" into a word of purchase, in a devise.

4. The manifest intent of the donor can not control the legal effect and operation of the word "heirs," when standing for the ordinary succession as a word of limitation, and render it a word of purchase. If the term "heirs," as used, comprehends the whole class of heirs, and they become entitled, on the death of the ancestor, to the estate, either in the same manner and to the same extent, and with the same descendible qualities, as if the grant or devise had been to A and his heirs, then the word "heirs" is a word of limitation, and the intention will not control the legal effect of the word.

5. The term "heirs" must be used as a mere designation of one or more individuals, or a new import given to it by superadded or ingrafted words of limitation varying the sense and operation, in order to make it a word of purchase. The rule in *Shelly's case*, being a rule of law, will not yield to the intention of the testator or grantor.

6. The rule in *Shelly's case* is in force in this State as a rule of property, and the question of intent in determining whether it is applicable in a given case does not turn upon the quantity of estate intended to be given to the ancestor, but upon the nature of the estate intended to be given to the heirs.

7. SAME—*former decision.* The decision of this court in *Belslay* v. *Engel*, 107 Ill. 182, is not inconsistent with the ruling herein. That case is clearly distinguishable from this. There, the word "heirs" was used as synonymous with the word "child" or "children." Expressions in the opinion in that case, so far as they indicate a different rule from that here announced, must be regarded as overruled.

8. SAME—*the particular case.* A testator devised to his wife and three daughters "the use of all" his property after the payment of his debts, to be divided between them "as the same would be by law without a will," except that none of the real estate, other than the wood land, be sold or disposed of, "but be kept sacred for their heirs:" *Held*, that the widow took a dower estate for life, and the three daughters took an estate in fee simple, as tenants in common, subject to dower, and that either heir might have sold her estate, without regard to the others, and that the word "heir," in the devise, was not used as the equivalent of "child" or "children" or "issue." This brings the case within the rule in *Shelly's case.*

APPEAL from the Circuit Court of Kendall county; the Hon. C. W. UPTON, Judge, presiding.

Hiram Bauder, of Kendall county, was the owner of four hundred acres of land in that county, forty acres of wood land in the "big woods," in Kane county, a house and lot and block of land in Montgomery, Kane county, and was possessed of $5000 in value of personal property, consisting of horses, cattle, farming tools, etc., and money. By his last will and testament he devised as follows:

"I give and bequeath to my beloved wife, Mary Bauder, and to my three daughters, Harriet Elizabeth, Nancy Catharine and Melissa, the use of all my property after the payment of all debts, (except what is hereinafter disposed of by this will,) to be divided among them as the same would be by law without a will, except that it is my will that none of the real estate be sold or disposed of, excepting the wood lot in the big woods,

for their use, but be kept sacred for their heirs; and I give and bequeath to my adopted boy, William B. Duffett, $200 when he becomes of age, provided he lives with my wife and family till that time, or till the family is broken up, which is my wish he so do; and I bequeath to my mother, Elizabeth Bauder, $25 a year from the income of my property, during her natural life."

Melissa Bauder died in 1860, soon after the death of the testator, without issue. Subsequently the land in the "big woods," in Kane county, was sold, and the money was divided between Mary Bauder, Harriet E. Bauder and Nancy C. Bauder, as provided in the will. In 1863, Mary Bauder, Harriet E. Bauder and Nancy C. Bauder divided the remaining real estate by setting apart one-third to Mary as her dower, and the remaining interest was divided into three equal parts, of which one was set apart to Harriet E., one to Nancy C., and the remaining third to the heirs of Melissa,—namely, one-half to her mother, the said Mary, and one-fourth each to Harriet E. and Nancy C. Harriet E. Bauder intermarried with John T. Carpenter, April 3, 1860, and she died August 27, 1869, leaving one child, Carrie Carpenter, her only heir-at-law, who died without issue May 7, 1865, having previously, by her last will, devised all of her property to her father, John T. Carpenter. Nancy C. Bauder intermarried with Leander Keck, January 1, 1865. Mary Bauder intermarried with J. C. Van-Olinder, in 1863.

The present bill was filed by Mary Van Olinder and Nancy C. Keck, against John T. Carpenter, for a construction of the will of Hiram Bauder. The circuit court held that the word "heirs," as used in the will, was a word of limitation, and not of purchase, and, accordingly, that the estate vested was in fee simple, and not for life. Carpenter appeals from that decree.

Mr. CHARLES WHEATON, for the appellant:

The word "heirs," when used in a will, should be taken as *designatio personarum*, when it is manifest the testator intended to use it in that sense. *Butler* v. *Huestis*, 68 Ill. 594; *Belslay* v. *Engel*, 107 id. 182; *Baker* v. *Scott*, 62 id. 86; *Pellin* v. *Blake*, 4 Burr. 2579; *Findlay* v. *Ridell*, Binn. 139; *Millett* v. *Ford*, 109 Ired. 159; *McMahon* v. *Newcomer*, 82 id. 565.

The rule in *Shelly's case* will not be allowed to defeat the plain intention of the testator. *Doe* v. *Jackman*, 5 Ired. 283; *Helm* v. *Frisbie*, 59 id. 526; *Rapp* v. *Matthias*, 35 id. 332; *Erom* v. *Harman*, 73 id. 412; *Clifford* v. *Farmer*, 79 id. 529; *Hileman* v. *Bouslaugh*, 13 Pa. St. 344; *Patrick* v. *Morehead*, 85 N. C. 62; *Urich's Appeal*, 86 Pa. St. 386; *DeKay* v. *Irving*, 5 Denio, 646.

The court will not resort to a technical construction for the purpose of defeating the manifest intention of the testator. (*Gardner* v. *Gardner*, 6 Paige, 455; *Stewart* v. *Chambers*, 2 Sandf. Ch. 382.) So the word "heirs" will not be interpreted as a word of limitation, if the intention is apparent to use it in another sense. *Burtis* v. *Doughty*, 3 Brad. (N. Y.) 287.

Again: The main thing to get at in the construction of a will is the intention of the testator, to be ascertained from the whole will taken together. 1 Jarman on Wills, (Perkins' ed.) 414, 425, and notes, where this question is fully discussed; *Covenhoven* v. *Shuler*, 2 Paige, 122; *Crosby* v. *Wendell*, 6 id. 548; *Pond* v. *Burgh*, 10 id. 140.

In a will, a general intent must yield to a particular intent, to be gathered from a construction of the whole will taken together. (2 Williams on Executors, pp. 1152-1164.) Thus, the words, "heirs of the body," in a will, yield to a clear intent that the estate should only be for life. Ibid. pp. 1153, 1154.

The same words may be applied to personalty and realty in different senses. Ibid. p. 1158.

Mr. M. O. SOUTHWORTH, and Mr. N. G. ALDRICH, for the appellees:

The true question of the intent turns, not upon the quantity of the estate intended to be given to the ancestor, but on the nature of the estate intended to be given to the heirs. *Baker* v. *Scott*, 62 Ill. 100; *Ryan* v. *Allen*, 120 id. 648.

From a careful examination of the cases cited, and such others as we have been able to find that bear on the question, we think it will appear that where the devise is made to "heirs," and not to "children," it can not be construed to go to them as a class. In the case at bar, the broadest terms are used, and it does not seem that by any rule of construction it can be made to mean that it is applicable to a class.

In the case of *Butler* v. *Huestis*, 68 Ill. 594, the distinction is very clearly set forth. There, on page 600, the court say: "Thus, as Mr. Jarman expresses it, if the limitation be to the heirs of the body, he takes a fee tail; if to his heirs generally, he takes a fee simple." And it appears, from all the authorities cited in that case, that in each and every instance where the devise is to go in any manner to a class, it must be first construed that they take as purchasers, and not by limitation.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The question here is, whether, in construing a devise which assumes to give a life estate to the ancestor and the remainder in fee to the heirs-at-law of such ancestor, the language of the devise in giving the life estate, and other parts of the devise showing, in connection with that language, that his intention was to give only a life estate, must control.

It is quite clear, upon authority, that the answer must be in the negative. We held in *Baker et al.* v. *Scott*, 62 Ill. 88, that the rule in *Shelly's case* is in force here as a rule of property, and that the question of intent, in determining whether it is applicable in a given case, does not turn upon the quan-

tity of estate intended to be given to the ancestor, but upon the nature of the estate intended to be given to the heirs; and it was shown in that case, that in the great case of *Perrin* v. *Blake*, 4 Burrows, 2579, (3 Greenleaf's Cruise on Real Prop. 313,) as finally decided in the Exchequer Chamber, it was admitted that the rule in *Shelly's case* often defeats the undoubted intention of the devisor, "for," it was said, "there never was an instance where an estate for life was expressly devised to the first taker, that the devisor intended he should have any more. But if he afterwards gives an estate to the heirs of the tenant for life, or to the heirs of his body, it is the consequence or operation of law that in this case supervenes his intention, and vests the remainder in the ancestor."

Preston, in his work on Estates, (vol. 1, p. 281, *283,) says, in speaking of the legal effect, under the rule in *Shelly's case*, of the word "heirs" in a devise or grant: "That all possible *heirs* of the given description are to take in succession, from generation to generation, under the name of heirs of the ancestor, is to bring the case immediately within the rule. That only one individual, or several individuals, is or are to take in the character of heirs, or, rather, as particular persons described by that name, either for their *lives only, or for an estate of inheritance to be deducible from them as the stock or ancestor, and that their heirs are described by superadded words of limitation, and as their descendants,* is to exclude the rule." And again, in the same volume, at page 362, (*363,) this author says: "In wills, the rule" (*i. e.,* in *Shelly's case,*) "applies generally, and without exception, to the several limitations, as often as the gift to the heirs is without any expression of qualification." And he thus illustrates his meaning: "Neither the express declaration, first, that the ancestor shall have an estate for his life, and no longer; nor, secondly, that he shall have only an estate for life in the premises, and that after his decease it shall go to his heirs of his body, and, in default of such heirs, vest in the person next in remainder, and that the

ancestor shall have no power to defeat the intention of the testator; nor, thirdly, that the ancestor shall be tenant for his life, and no longer, and that it shall not be in his power to sell, dispose or make away with any part of the premises, * * * will change the word 'heirs' into a word of purchase."

Kent says, (vol. 4, p. 233, 8th ed.) in speaking of the declaration of the Exchequer Chamber in *Perrin* v. *Blake, supra* : "The result of that famous controversy tended to confirm, by the weight of judicial authority at Westminster Hall, the irresistible pre-eminence of the rule," (*i. e.*, in *Shelly's case*,) "so that even the testator's manifest intent could not control the legal operation of the word 'heirs,' when standing for the ordinary line of succession as a word of limitation, and render it a word of purchase. If the term 'heirs,' as used in the instrument, comprehended the whole class of heirs, and they became entitled, on the death of the ancestor, to the estate, in the same manner and to the same extent, and with the same descendible qualities, as if the grant or devise had been simply to A and his heirs, then the word heirs is a word of limitation, and the intention will not control the legal effect of the word. The term must be used as a mere designation of one or more individuals, or a new import given to it by superadded or engrafted words of limitation, varying its sense and operation, in order to make it a word of purchase."

The principle, applicable here, is clearly and forcibly stated in Hay's Principles for Expounding Dispositions of Real Estate, 96, (7 Law Lib. 52,) thus: "The requisite limitations to the ancestor and his heirs being found, the rule must be applied. It can never be a question whether the rule shall be applied or not. We might as well be asked whether a testator intended to contravene the rule against perpetuities. It will no more yield to individual intention than any other fundamental law of property. The rule admits of no exceptions."

To like effect is *Bender* v. *Fleurie*, 2 Grant's Cases, 345. The testator gave to his daughter certain land, in these words:

"She shall have it as her own during her life, and then it is to come to the heirs of her body for their own use." And the Supreme Court of Pennsylvania said: "But it is said, the testator did not mean to give her an estate tail. Perhaps he did not. But he has used words which, in law, mean nothing else. If he intended to give but a life estate *voluit non dixit,* we must take what he said, not what he meant. *   *   * But no court, in this State or in England, has ever treated the phrase, "heirs of her body,' as words of purchase, when they are used with reference to the issue of a devisee to whom a life estate is given. They are words of limitation, and, as such, they create an estate tail in the first taker, which can not be cut down, even by the clearest desire that it shall be a life estate only." Under our statute cutting off entails, as construed in *Butler* v. *Huestis,* 68 Ill. 594, such a devise, we concede, would not here create an estate tail. But that is purely because of our statute. The rule of construction thus laid down, is, beyond question, pertinent, and applicable here to devises like that before us, which are unaffected by any statute of our State.

In *Hileman* v. *Bouslaugh,* 13 Pa. St. 344, the same court, speaking of the rule in *Shelly's case,* said: "The requisite limitations to the ancestor and his heirs being found, the rule must be applied. It can never be a question whether the rule shall be applied or not, whether the author of the limitation intended it to be applied or not." And again: "The question on a will is not whether the testator intended that the rule shall not operate,—for this is not subject to his power,—but whether he used the words, 'heirs of the body,' as synonymous with the word 'children,' or its proper equivalent."

The result of the authorities in regard to the question before us is well stated by Mr. Justice ELLIOTT, speaking for the Supreme Court of Indiana, thus: "It has seemed to many that there is a conflict between the rule declaring that the

intention of the testator must govern, and the rule in *Shelly's case;* but the appearance of conflict fades away when it is brought clearly to mind that when the word 'heirs' is used as a word of limitation, it is treated as conclusively expressing the intention of the testator. Where it appears that the word was so used, the law inexorably fixes the force and meaning of the instrument. If once it is granted that the word was used in its strict legal sense, nothing can avert the operation of the rule in *Shelly's case;* so that the inquiry is, was the word used as one of limitation? The only method in which an instrument employing the word 'heirs' can be shown not to be within the rule, is by showing that the word was not employed in its strict legal sense." *Allen* v. *Croft,* 109 Ind. 476. See, also, Theobald on Wills, 336, *et seq.* The doctrine thus sustained was assumed by us to be the law in *Wicker et al.* v. *Ray,* 118 Ill. 472, and *Ryan et al.* v. *Allen,* 120 id. 648, though the present question was not there discussed.

Counsel for appellant cite general rules of construction, and some cases in apparent conflict with the foregoing views. A careful examination of the general rules cited, will show that when their application to cases like the present is understood, there is no conflict; and the cases cited will be found, on examination, distinguishable from the present case, in that it appeared in those cases, from the connection in which they occurred, that the words "heirs," or "heirs of body," were used as synonymous with "child" or "children," or some other limited class, and not as meaning those who take by inheritance, generally,—as, heirs, in the technical sense of the word. Thus, in *Millet et al.* v. *Ford,* 109 Ind. 159, the devise is this: "I give and bequeath unto my son, James R. Rachels, during his lifetime, the following real estate: * * * to have the use of the above described land during said James' lifetime, and after his death to the heirs of his body in lawful wedlock, and none others." The words, "heirs of his body in lawful wedlock," could by no possibility intend others than

his children, and so the devise was precisely as if it had been to James R. Rachels and his children. And so in *Urich's Appeal*, 86 Pa. St. 386, the devise is to the devisor's children and their heirs. But in a subsequent clause he declares that none of his children should have the right to sell or encumber the lands, but the lands shall remain free for their children or heirs, etc., showing clearly that "children" and "heirs" were used as synonymous,—in other words, that when he said "heirs" he intended "children."

The other cases cited by counsel for appellant will be found to be alike distinguishable from the present case,—restricting and narrowing the meaning of the word "heirs" to particular persons, or to a particular class of persons less than that of heirs in general. The devise in *Belslay* v. *Engel*, *supra*, was: "Sixth, I give and bequeath unto my grand-daughter, Catharine Belslay, the free use and occupation of," (then describing the lands in dispute,) "to have and to hold, to use, occupy and enjoy the same * * * during her natural life. * * * Thirteenth, it is my will, and this bequest is made upon the express declaration, that in case any of my said grandchildren should depart this life without issue of their body, then that all their share of said real estate * * * shall be equally divided among all my grandchildren and their legal representatives, and the title thereto thereafterwards so vest forever. It is my will that no title in fee to any of said land shall vest in my said grandchildren, and I declare it to be my will that they shall have only a life estate therein, and that the fee simple shall vest in their legal heirs." It is plain that this is but equivalent to saying, "I give the life estate to my grandchildren, and the remainder in fee to their children." The heirs of those that die without issue of their bodies,— *i. e.*, children,—being excluded by the necessary effect of the devise, it inevitably follows that none but children of grandchildren could be their "legal representatives" or their "legal heirs," and therefore, in using those terms, the testator clearly

meant children of grandchildren,—and such was the effect of the decision.

Beyond all question, then, the case was rightly decided. In the argument of the opinion, however, there is language that seems to place the decision upon the intention of the testator to vest a fee in the legal representatives or legal heirs of the grandchildren, as determined from a consideration of all of the language of the will, and not, as should have been done, upon the evident intention of the testator to use the words "legal representatives" or "legal heirs" as synonymous with "children," and, therefore, as words of purchase and not of limitation. This language of the opinion was unadvisedly assented to by a majority of the members of the court, and is now disapproved and overruled.

It is clear from the language, "to be divided among them as the same would be divided by law without a will," that the testator intended to give his wife and daughters the same use of the real estate that they would have been entitled to had he made no will, but that they shall not be allowed to sell it. A devise of the use of the land is equivalent to a devise of the land itself, and carries the legal as well as the beneficial interest therein. (*Ryan et al.* v. *Allen, supra.*) Had there been no will, our statute would have given the widow dower in the lands, and vested the fee in the daughters,—one-third each, as tenants in common. Neither would have had an interest in the individual interest of the other, and therefore the heirs of one would not necessarily have been the heirs of the other. In the light of these observations, the will must be read, substantially, thus: "I give to my wife, Mary, dower in my lands, and I give to my daughters, Harriet E., Nancy C. and Melissa E., each, the undivided one-third of my lands, subject to the dower of my wife, Mary, therein, except that it is my will that none of the real estate be sold or disposed of, * * * but that the same be kept sacred for their heirs." The injunction to not sell, is plainly upon each, severally, because the title

is not that of joint tenants, but that of tenants in common, and each, therefore, might sell without regard to the others. And for like reason the injunction to preserve is upon each, severally, and, necessarily, to preserve that which is given her, and for her own heirs, because the heirs of no one else, merely as such, can have any interest in her estate.

The only limitation in the language employed in the will is that we have been considering. There is nowhere a single word or syllable to indicate that the word "heirs" was here used as the equivalent of "child" or "children" or "issue," or to otherwise indicate a class less comprehensive than that included within the technical meaning of "heirs-at-law." Under our statute, therefore, this general language of the devise carries a fee. (Rev. Stat. 1874, chap. 30, sec. 13.) The word "heirs," as here used, clearly means all who are to take, generally, without exception, as a class of inheritable persons, and as the successive heirs of the daughters named, severally, and not a part,— as individuals selected out of the class of heirs,—and therefore brings the case within the rule in *Shelly's case.* 1 Preston on Estates, p. 282, *283.

Stress is laid, in argument, upon different matters, as presented by the entire devise, claimed to show that the testator could not have intended to give an estate in fee to his daughters. But we have seen that that is not the question. If the language he used, in the legal sense that must be placed upon it in the connection in which it occurs, imports a conveyance in fee to the daughters, such must be its effect, although it may appear that he actually only intended to convey a life estate, the only inquiry permissible being, whether, from other parts of the devise, it appears that the word "heirs" was used in a sense more restricted than the term itself imports,—as the equivalent of "children," "issue," or some other partial or restricted class of heirs.

Finding no cause to disturb the judgment, it must be affirmed.                    *Judgment affirmed.*