## LOYAL P. GRISWOLD

### *v.*

## NORVAL R. HICKS *et al.*

*Filed at Springfield March 31, 1890.*

1. CONVEYANCE—*of the estate granted—estate for life, with remainder in fee.* A conveyance of land by A, as party of the first part, to his children, B, C, D and E, "and the heirs of their bodies, party of the second part," after the words of grant contained this clause: "Meaning and intending by this conveyance to convey to my said children the use and control of said real estate during their natural lives, and at their

death to go to their children; should they die without issue, to their legal representatives." The *habendum* was "to the only proper use, benefit and behoof of the said party of the second part, their heirs and assigns forever:" *Held,* that the word "heirs," in the *habendum* clause, meant the children of the grantees, and that B, C, D and E, the children of the grantor, took only a life estate, and their children took the remainder in fee.

2. SAME—*the word "heirs"—as meaning children.* The owner of property, by his deed purporting to be made to his four children and "to their heirs," used the words, "meaning and intending by this conveyance to convey to my said children the use and control of said real estate during their natural lives, and at their death to go to their children; should they die without issue, to their legal representatives:" *Held,* those words were intended to mean, that the grantor used the word "heirs," not in its legal sense, but as meaning children.

3. SAME—*rule of construction.* Technical words, or words of known legal import, must be given their legal effect when used in a deed or will, even though the grantor or testator uses inconsistent words, unless such inconsistent words are of such a nature as to make it perfectly clear that they were not used in their proper legal sense.

4. JURISDICTION—*in chancery—bill to impeach decree against infants.* A court of equity has jurisdiction of a bill by an infant, to impeach a decree of the county court for the sale of land to pay debts, when such infant's interest in the land is affected thereby, and there was fraud and collusion between the administrator and the guardian *ad litem* of the infant, in concealing from the court the infant's interest in the land.

5. ERROR—*as to a decree favorable to the party complaining.* A party can not be heard to complain of a portion of a decree which takes from him no right, but is solely for his benefit.

APPEAL from the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. PALMER & SHUTT, for the appellant:

A decree is always within the control of the court during the term of its entry. *Danforth* v. *Danforth,* 105 Ill. 603.

The decree of the county court for the sale of the land was not final, and if the rights of the infant heirs are not sufficiently protected, the court will refuse to confirm the sale, and set aside the decretal order and settle all rights in the land.

One can not complain of a cloud to land to which he has no title. *Hopkins* v. *Granger,* 52 Ill. 504.

The mortgage of Griswold passed to him whatever title the mortgagor acquired by the deed from Lucy A. Hogg.

If in any instrument a freehold be limited to the ancestor for life, and the inheritance to his heirs, mediately or immediately, the first taker has the whole estate. The word "heirs" or "heirs of the body" are words of limitation, and not words of purchase. *Butler* v. *Huestis,* 68 Ill. 594.

The words "heirs of their bodies" are, for all purposes of construction, to be rejected as useless. *Baulos* v. *Ash,* 19 Ill. 187.

The words, "meaning and intending by this conveyance to convey," etc., can not be regarded as a part of the deed. It can have no greater effect than is given to the *habendum* clause, which can not divest the estate already vested by the deed. *Riggin* v. *Love,* 72 Ill. 503.

Mr. JAMES M. RIGGS, for the appellees:

The technical meaning of the term "premises" is everything in a deed which precedes the *habendum.* (*Berry* v. *Billings,* 14 Me. 416; 5 Am. and Eng. Ency. of Law, 454.) And where the purpose of the grant is clear from the premises, the *habendum* yields to the manifest intent of the grant. *Riggin* v. *Love,* 72 Ill. 555; *Cooper* v. *Cooper,* 76 id. 61.

As to the rule in *Shelly's case,* see *Butler* v. *Huestis,* 68 Ill. 599; *Baker* v. *Scott,* 62 id. 91; Perkins, sec. 170; 3 Bacon's Abr. 434–436.

As to the rules for the construction of deeds, see *Mills* v. *Catlin,* 22 Vt. 105; *Richardson* v. *Palmer,* 38 N. H. 218; *Jackson* v. *Blodgett,* 16 Johns. 178; *Emmerson* v. *White,* 29 N. H. 499; *Moore* v. *Griffin,* 22 Me. 354; *Lehndorf* v. *Cope,* 122 Ill. 326.

The decree of the county court was final after the term. *Myers* v. *Manny,* 63 Ill. 213; Story's Eq. Jur. sec. 408 a; *Hurd* v. *Goodrich,* 59 Ill. 450; *Jacquemart* v. *Erb,* 53 id. 291.

As to the right to maintain the bill, see *Robbins* v. *Swain,* 68 Ill. 202; *Loyd* v. *Malone,* 23 id. 44.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 16th day of September, 1867, William Hicks was the owner of four certain forty-acre tracts of land, and on that day conveyed the same to four of his children by the following deed:

"This indenture, made the 16th day of September, in the year of our Lord 1867, between William Hicks, of the county of Greene and State of Illinois, party of the first part, and Isham V. Hicks, William H. V. D. Hicks, Luther M. Hicks and Laura A. Hicks, and the heirs of their bodies, all of the same county and State, party of the second part:

"*Witnesseth*, that the said party of the first part, for and in consideration of the sum of $40 (being from each child $10) in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, and the said party of the second part forever released and discharged therefrom, has remised, released, sold, conveyed and quitclaimed, and by these presents does remise, release, sell, convey and quitclaim, unto the said party of the second part, their heirs and assigns, as aforesaid, forever, all the right, title, interest, claim and demand which the said party of the first part has in and to the following described lots, pieces or parcels of land, to-wit: To Isham V. Hicks, the north-west quarter of the north-west quarter of section twenty-eight (28); to William H. V. D. Hicks, the south-west quarter of the south-west quarter of section No. twenty-eight (28); to Luther M. Hicks, the east half of the east half of the south-east quarter of section No. twenty-nine (29); and to Laura A. Hicks the west half of the east half of the south-east quarter of section twenty-nine,—all in township No. twelve (12), north of range No. twelve (12), west of the third principal meridian, containing in all one hundred and sixty acres of land; and to each child forty acres, all lying and being in Greene county, Illinois,—meaning and intending by this conveyance to convey to my said children the use and con-

trol of said real estate during their natural lives, and at their death to go to their children; should they die without issue, to their legal representatives;—to have and to hold the same, together with all and singular the appurtenances and privileges thereunto belonging or in anywise thereunto appertaining, and all the estate, right, title, interest and claim whatsoever of the said party of the first part, either in law or equity, to the only proper use, benefit and behoof of the said party of the second part, their heirs and assigns, forever; and the said William Hicks, party of the first part, hereby expressly waives, releases and relinquishes unto the said party of the second part, their executors, administrators and assigns, all right, title, claim, interest and benefit whatever in and to the above described premises, and each and every part thereof which is given by or results from all laws of this State pertaining to the exemption of homesteads; and the said party of the first part, for himself and his heirs, executors and administrators, doth covenant, promise and agree, to and with the said party of the second part, their heirs, executors, administrators and assigns, that he hath not made, done, committed, executed or suffered any act or acts, thing or things, whatsoever, whereby or by means whereof the above mentioned and described premises, or any part or parcel thereof, now are, or at any time hereafter shall or may be, impeached, charged or encumbered, in any way or manner whatsoever.

"In witness whereof the said party of the first part hereunto sets his hand and seal, the day and year above written.

[Seal.]                    WILLIAM X HICKS."
                                  his
                                  mark.

After the execution and delivery of this deed, the said Laura A. Hicks, one of the grantees, having intermarried with one Charles Hogg, conveyed the said west half of the east half of the south-east quarter to the said Luther M. Hicks, and the latter thereupon took possession thereof, together with said east half of the east half of the south-east quarter conveyed to him by

his father, and continued in such possession until September 20, 1888, when he died, leaving Lucy J. Hicks, his widow, and appellees, his only children. On the 28th day of September, 1886, the said Luther M. Hicks, and his wife, Lucy J., conveyed, by mortgage deed of that date, both of said forty-acre tracts to appellant, to secure the payment of $2400. On the 1st day of October, 1888, Isham Roberts was duly appointed administrator of the estate of Luther M., and afterwards, on his petition,—to which said widow and this appellant and these appellees were made parties,—the county court of said Greene county ordered him to sell all of said land, to pay debts theretofore allowed against said estate. The said widow claimed homestead and dower in said land, but consented, in writing, that it might be sold, she to take out of the proceeds. Appellant also consented to such sale, his mortgage to be first satisfied out of the fund arising therefrom. This is a bill in chancery, by appellees, infants, by next friend, against appellant, the said widow and administrator, to remove said order of said county court as a cloud on their title to the east half of the east half of the south-west quarter, described in said deed.

In addition to the foregoing facts the bill charges, that while complainants were made parties to the petition of said administrator in said county court, being infants, they were represented therein only by a guardian *ad litem*, who, by agreement and collusion with appellant and said administrator, did not fairly represent their interests, and that their ownership in said lands was concealed from said court. The bill also alleges that the said Laura A. Hogg is still living, but has no heirs of her body.

To the bill the appellant filed a general demurrer, which was overruled, and the defendant elected to abide by the same. Thereupon a decree was rendered in favor of appellees, which found and adjudged that said Luther M. Hicks took only a life estate in the forty acres conveyed to him by William Hicks, and that appellees took the remainder in fee simple, and as to

this forty acres appellant's mortgage and the said county court proceedings were held to be a cloud upon appellees' title, and were decreed to be null and void. As to the forty acres conveyed to said Luther M. by Laura A. Hogg, the decree complained of found, that at the time of said Luther M.'s death he owned an estate therein, which is liable to be sold to pay his debts, subject to the appellant's rights under his mortgage, and subject to the rights of said widow; and it is decreed that said administrator sell the same under his said county court decree, and dispose of the proceeds in due course of administration. The decree also found that there was collusion in the procurement of the said decree in the county court. The defendant Griswold alone appeals.

The theory of the bill is, that the deed from William Hicks to the father of the complainant vested only a life estate in him to the land conveyed, with remainder in fee to his children. This theory, of course, concedes that the estate of Luther M. Hicks has no interest or title in the other forty-acre tract beyond the life of Laura A. Hogg.

It is first insisted, that whatever rights appellees have, as disclosed by their bill, are enforceable in the county court, and therefore they have no right to come into a court of chancery for relief. We do not deem it important on this point to determine whether the status of the proceeding by the administrator in the county court is such as that appellees could attack the decree in question in that court. Under the facts well pleaded in this bill, and which are, of course, admitted by the demurrer,—the complainants below being infants,—the jurisdiction of a court of equity may unquestionably be invoked, and the decree of the county court impeached for fraud and collusion. *Loyd* v. *Malone*, 23 Ill. 44; *Kuchenbeiser et al.* v. *Beckert et al.* 41 id. 172; *Lloyd* v. *Kirkwood et al.* 112 id. 329.

It is next contended, that the decree, in so far as it deals with the tract conveyed by Laura A. Hogg to the father of appellees, is erroneous. That part of the decree is solely for

the benefit of appellant. It gives appellees no right in that tract. It takes from appellant no right which he had therein under his mortgage or the decree of the county court. There is, therefore, certainly no error in it of which he can complain.

The principal question in the case is, are appellees the owners in fee of the east half of the east half of the south-east quarter described in the bill, the decision of which depends solely upon the construction to be placed on the deed from William Hicks to their father. But for the rule in *Shelly's case*, there would be no ground for controversy on this question. The deed clearly shows upon its face an intention on the part of the grantor to vest a life estate in the father of appellees, and the remainder in fee in his children. If, however, the language of the deed brings it within that rule, then intention goes for naught, and its legal effect must control.

The deed, it will be seen, is not skillfully drawn, resulting, no doubt, in part, from the use of a blank form. If the word "heirs," when used the second time in the deed in the granting clause, can with certainty be said to mean, "heirs of their bodies," as expressly stated immediately following the names of the grantees, then the rule in *Shelly's case*, as at common law, would have no application, our statute expressly providing in such case that he who would by the common law have taken a fee tail, shall become seized for his natural life, only, and the heirs of his body, tenants in tail according to the common law, take the fee. (Rev. Stat. sec. 6, chap. 30, title "Conveyances;" *Butler* v. *Huestis et al.* 68 Ill. 594.) We are inclined to think that such is the proper construction of the language used. The usual language in the form of deeds here used, in that part of it where the word "heir" is used the second time, is, "sell, convey, etc., unto the said party of the second part, their heirs and assigns forever." Here, it will be observed, after the words "heirs and assigns" are used the unusual words, "as aforesaid," which would seem naturally to relate back to the former use and qualification of the word "heirs."

However, we do not regard it important, in the decision of the point under consideration, to maintain this construction, for while, if the requisite limitations to the ancestor and his heirs is found in the instrument, the rule must apply, whether the grantor so intended or not,—in other words, while the question as to whether the grantor intended the rule to apply can not arise, nevertheless it may be shown by other parts of the deed that the word "heirs" was not used by him in its legal, technical meaning.   *Carpenter* v. *Van Olinder et al.* 127 Ill. 42; *Allen* v. *Croft*, 109 Ind. 476.   See, also, *Sniver* v. *Mann*, 99 Ind. 190, (Am. Rep. vol. 50, p. 82.)   In this last case, ELLIOT, J., says:   "We have no doubt that the word 'heirs' may be construed to mean children, where it is plain that the testator employed it in that sense," citing numerous cases.   It is true that it must clearly appear that the word was used in a different sense from that which the law attaches to it.   In the case just cited, Judge ELLIOT quotes from Lord REDESDALE, in *Jesson* v. *Wright*, 2 Bligh, (H. L. Cas.) 56, the following language: "The rule is, that the technical words shall have their legal effect, unless, from subsequent inconsistent words, it is very clear that the testator meant otherwise."   Also, from Lord DENMAN, in *Doe* v. *Gallini*, 5 B. & Ad. 621:   "Technical words, or words of known legal import, must have their legal effect, even though the testator uses inconsistent words, unless these inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense."

In *Urich's Appeal*, 86 Pa. St. 386, (Am. Rep. vol. 27, p. 707,) the case is stated in the syllabus, as follows:   "A testator devised lands to his children and their 'heirs' by a separate clause.   By a subsequent clause he declared that none of the children should have a right to sell or encumber the lands, but 'the land shall remain free for their children or heirs, and they (my said children) shall have the use, income and profit

of said lands and farms during their lifetime.' By a still later clause he gave them the power to dispose of their interest by will, as aforesaid." Held, that the testator's children took but life estates. In the opinion, AGNEW, C. J., says: "We agree with all said upon the first expression of this devise, if the testator intended to give him a fee, and used the word 'heirs' in its legal acceptation. But that intention is the pivot of the question, and must be carefully gathered from all parts of the will."

The clause in this deed, "meaning and intending by this conveyance to my said children, the use and control of said real estate during their natural lives, and at their death to go to their *children;* should they die without issue, to their legal representatives," shows, beyond question, that William Hicks used the word "heirs" in this deed, not in its legal sense, but as meaning children. Counsel for appellant call this clause a memorandum, and say, "if it can be regarded as a part of the deed, it can have no greater effect than is given to the *habendum* clause of which it is a part." Why should it not be considered a part of the deed? And why say it is a part of the *habendum* clause? It does appear to be a part of the deed. It is in no way connected with the *habendum,* except that it immediately precedes it. It is a separate, independent statement of the grantor, from which it clearly appears that by the use of the word "heirs" he meant children, and serves no other purpose.

We think the decree of the circuit court was right, and it will be affirmed.

*Decree affirmed.*