*Cause transferred.*

---

(No. 14415.—Reversed and remanded.)

ALICE M. POTTER, Appellant, *vs.* SAMUEL H. POTTER *et al.* Appellees.

*Opinion filed December 19, 1922.*

1. WILLS—*remainder to life tenant's "living children or to their living heirs" is contingent.* A devise to the testator's wife for her life, with a provision that the remainder at her death shall "be equally divided between our living children or to their living heirs," creates a contingent remainder under the rule that a gift to survivors which is preceded by a particular estate at the expiration of which the gift is to take effect in possession, will take effect in favor of those, only, who survive the particular estate.

2. SAME—*when word "heirs" must be given its technical meaning.* A devise of a remainder at the death of the life tenant to the testator's "living children or to their living heirs" indicates an intention to substitute the legal heirs of any child who dies before the termination of the life estate as devisees in place of the child so dying, where there is nothing in the will showing a contrary intention; and the word "living" merely limits the gift over to those heirs who survive the death of the life tenant.

3. SAME—*when technical words must be given their legal effect.* In construing a will, technical words must be given their legal effect even though the testator uses inconsistent words, unless the latter make it clear that he did not intend to use the technical words in their strict sense.

4. SAME—*who will take as "living heirs."* Under a devise of a contingent remainder at the life tenant's death to the testator's "living children or to their living heirs," if a son of the testator dies during the existence of the life estate leaving a wife but no children, his wife and his brothers and sisters living at the life tenant's death will take the deceased son's share, but the life tenant, his mother, will take no interest.

5. SAME—*when children who survive the period of distribution must share the gift over with other heirs of any deceased child.*

Where a testator provides that at the death of his wife, who is made life tenant, his property shall be "equally divided between our living children or to their living heirs," the "heirs" are not intended to be substituted only in the event of the death of all the children, nor are the children who survive to take all, but the children living at the time of distribution must share, as heirs, with other heirs of any children who died prior to the death of the wife.

6. SAME—*who are heirs*. Heirs are all those persons upon whom the law in the first instance casts the inheritance upon the death of the ancestor intestate, and there can be no other heirs than living heirs.

7. SAME—*when words repeated in a will must be understood in same sense as when first used.* Words used in one part of a will must be understood in the same sense when used elsewhere in the same instrument, unless something in the context makes a different meaning imperative.

8. SAME—*when modifying words do not affect meaning of the word "heirs."* The word "heirs," when preceded by such words as "right," "nearest," "next," "legal," "lawful" and "living," is not narrowed in meaning, and should not be interpreted, in such case, as meaning children or descendants unless followed by other words or where the context clearly shows the modified meaning.

CARTWRIGHT, J., dissenting.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

A. F. GOODYEAR, and R. F. GOODYEAR, for appellant.

FREE P. MORRIS, and ROSCOE C. SOUTH, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Maltby G. Potter died on August 28, 1908, the owner of lands in Iroquois county, which were devised by his will executed on October 2, 1901, which was admitted to probate, and, omitting the formal parts, reads as follows:

"*First*—It is my will and desire that my funeral expenses and all my just debts be fully paid.

"*Second*—I give and bequeath to my wife, Mahala G. Potter, all my personal and real estate, of every name and

nature, during her lifetime, she to receave all rents and revanews for same, and she to pay the taxes and care for the property, and at her death all the property to be equally divided between our living children or to their living heirs, each of our children to share equal and alike.

"*Lastly*—I hereby nominate and appoint my sons George B. Potter and James C. Potter, 'they not to be required to give bond,' to be the executors of this my last will and testament, hereby revoking all former wills by me made."

The testator was survived by his wife, Mahala G. Potter, and six children. He had had other children, but all died in his lifetime, leaving no descendants. His daughter Jessie died ten days before his will was executed, leaving her husband, D. William Good, surviving her. The relationship between all the members of the Potter family in the lifetime of the father and mother was pleasant, as shown by the oral testimony. It further appeared from such testimony that William Good, husband of Jessie, was a resident of Roanoke, Virginia, at and since the death of Jessie, and that he was well to do financially. Of his children surviving him, his daughter Minnie G. Posson died leaving no descendants but leaving her husband, Cornelius Posson, surviving her, and his son Fred A. Potter died leaving no descendants but leaving his widow, Alice M. Potter, who is the appellant, surviving him. Afterward the testator's widow, the life tenant, died, and the appellant filed a bill for the construction of the will, alleging that she is entitled to one-half of the property owned by the testator at the time of his death which her husband, Fred A. Potter, would have taken had he survived his mother, Mahala G. Potter, and that Cornelius Posson was entitled to the same interest in the part which his wife, Minnie G. Posson, would have taken if she had survived her mother; that the surviving children of the testator deny her claims and insist that she did not take anything under the will, and she therefore prays for a construction of the will in accordance

with her contention. The surviving children, who were made defendants, answered, admitting all the allegations of fact but denying that the appellant is entitled to any share in the estate of the testator, and averring that the true meaning of the will is that at the death of the widow the estate should be equally divided among the children then living. The court entered a decree finding that the true intention of the testator was that only the children who survived the life tenant were entitled to take under clause 2 of the will; that the words "living heirs" should be construed as children or descendants and do not include the appellant, and decreeing that the surviving children of the testator are the owners in fee simple of the land and that no other persons have any interest therein. The complainant has appealed and insists that the construction of the court is erroneous, and that she is entitled as an heir of the son of the testator, who died in the lifetime of the life tenant, to his share of the estate.

The case turns upon the construction to be given to the second clause of the will, particularly to the language which directs that all the property at the death of the life tenant shall "be equally divided between our living children or to their living heirs, each of our children to share equal and alike." The estate so devised to the children was manifestly a contingent remainder under the well established rule that a gift to survivors which is preceded by a particular estate, at the expiration of which the gift is to take effect in possession, will take effect in favor of those, only, who survive the particular estate. (*Ridgeway* v. *Underwood,* 67 Ill. 419; *Blatchford* v. *Newberry,* 99 id. 11; *Schuknecht* v. *Schultz,* 212 id. 43; *Burlet* v. *Burlet,* 246 id. 563; *Bender* v. *Bender,* 292 id. 358.) It could not be known until the death of the life tenant who would survive her to take the estate or who would be the heirs of any children who might have died in her lifetime.

The devise of the remainder being, "to be equally divided between our living children or to their living heirs," indicates the intention of the testator to substitute the heirs of any child who may have died before the termination of the estate of the life tenant as a devisee in the place of the child so dying. (*Ebey* v. *Adams,* 135 Ill. 80; 1 Redfield on Wills, 486.) The essential question in controversy concerns the meaning to be given to the word "heirs." Who are the "living heirs" who are to share with the living children in the distribution of the estate? The word "heirs" is a technical word with a fixed legal meaning, and, unless controlled by or inconsistent with the context, must be interpreted according to its strict technical meaning, as importing those persons designated by law to succeed to the estate in case of intestacy. (*Rawson* v. *Rawson,* 52 Ill. 62; *Richards* v. *Miller,* 62 id. 417; *Alexander* v. *Masonic Aid Ass'n,* 126 id. 558; *Belleville Savings Bank* v. *Aneshaensel,* 298 id. 292.) It is, however, frequently used not according to its technical meaning but in a more popular sense, and its signification then is to be taken according to the intention. It has been held to mean children, issue or descendants; (*Bland* v. *Bland,* 103 Ill. 11; *Summers* v. *Smith,* 127 id. 645; *Smith* v. *Kimbell,* 153 id. 368;) heirs of the blood of the testator; (*Black* v. *Jones,* 264 Ill. 548;) husband or wife; (*Richards* v. *Miller, supra;*) and it has been held to exclude the latter, even though technically an heir, where such meaning is inconsistent with the context. (*Black* v. *Jones, supra; Smith* v. *Winsor,* 239 Ill. 567.) The question is entirely one of intention, and in interpreting the language of the will to ascertain the intention which the testator has expressed, technical words must be given their legal effect even though the testator uses inconsistent words, unless the latter make it clear that the testator did not intend to use the technical words in their proper sense. *Griswold* v. *Hicks,* 132 Ill. 494.

In this case there is no context, no single word in the instrument, tending to qualify in any degree the three lines disposing of the remainder by directing its equal division among the living children or to their living heirs, each of the children to share equal and alike. No context appearing inconsistent with giving the word "heirs" its technical meaning, the appellees urge that it was the testator's plain intention to have the property remain in his immediate family, and evidence was introduced as to the condition of the testator's family at the time of the execution of his will and of his death from which the inference of such intention is sought to be drawn. There is no dispute in the evidence. At the date of the execution of his will the testator had six living children and ten grandchildren. His daughter Jessie had died ten days before, leaving no children but leaving a husband surviving her. Four other children had previously died, leaving no children and no spouses surviving. Four of the living children had children and two more were born during the life of the testator and another after his death and during the life tenancy. The other two children had no children. Both have died since the testator's death, leaving no children but leaving spouses. Appellant was married to the oldest of the testator's children on March 27, 1877. He died July 13, 1920, before the death of the life tenant. They had no children.

It is argued that the testator's intention was to keep the property for his own blood by giving it first to his wife for life and then at her death to his then living children and the children of such as had died. This is assuming an intention which may perhaps have existed in the testator's mind, but it clearly has no foundation in the language of his will. It is said that if the words "their living heirs" are to be interpreted in their technical sense, the share of the testator's son, the appellant's husband, would go to his heirs, who are his wife, (who is the appellant,) his mother, (the life tenant,) and his brothers and sisters who were

alive at the death of the life tenant, all of them being tech-
nically the living heirs of Fred. This ignores the fact that
the interests in the remainder conveyed by the will are con-
tingent; that no child or heir took any interest in the re-
mainder who was not living at the death of the life tenant;
therefore the life tenant, his mother, could not take as an
heir of Fred, though his brothers and sisters who were
alive at her death, together with his widow, would take un-
der the terms of the will.

It is also argued that the words "or to their living heirs"
are intended to substitute the heirs of the children as devi-
sees only in the event of there being no living children of
the testator and his wife at the time of the death of the
life tenant; that the four children living at that time take
to the exclusion of the heirs of the children who died. This
conclusion is directly contrary to the conclusion reached in
the case of *Ebey* v. *Adams, supra,* and in the cases cited
in the opinion in that case.

The circuit court erred in holding that the words "liv-
ing heirs" should be construed as children or descendants.
Those words should be given their technical meaning and
include all the legal heirs of the two deceased children of
the testator that died after the death of the testator.

The decree is reversed and the cause remanded.

*Reversed and remanded.*

Per CURIAM: A rehearing having been granted in this
cause, we have further considered all of the arguments and
authorities submitted and are unable to recede from our
former conclusion that the words "their living heirs" can
not be consistently interpreted as meaning children or de-
scendants, as contended by appellees' counsel. The mean-
ing of the testator by the use of the words "their living
heirs," as shown by the context of the will, is just the same
as if the word "living" had not been used in that phrase at
all. The latter part of clause 2 of the will should be inter-

preted as if it read, "and at her death all the property to be equally divided between our living children or to their heirs, each of our children to share equal and alike." The word "living," preceding the word "heirs," has no tendency whatever to narrow or limit the meaning of the technical word "heirs" as found in said clause. The living heirs are all those persons upon whom the law would in the first instance cast the inheritance upon the death of the ancestor intestate, as there can be no other heirs than living heirs. In other words, dead heirs cannot inherit or take property under a will, and all heirs that do inherit or take property must necessarily be living heirs, and must include all those persons who stand in the same relation to the ancestor in respect to the right of inheritance. (Jarman on Wills, 326, and citations.) So in this case, it is not possible,—at least not reasonable or permissible,—to construe the words "living heirs" as indicating an intention of the testator to use those words in the sense of living children or living descendants or as children or descendants. He had already used the words "living children," and the context shows that by the use of such words he meant living children, and when he afterwards used the words "living heirs," there is no good reason for concluding that he did not mean living heirs. If by such latter words he meant "living children," it would have been the most natural and probable thing for him to have used the words "living children" instead of the words "living heirs," and the other parts of the will furnish no reason whatever for concluding that the words "living heirs" meant living descendants or living issue. To so hold would simply mean that in a will the testator is not to be held as meaning what he plainly expresses therein and without other modification or expression whatever authorizing such interpretation. By the use of the words "living heirs" the testator simply meant heirs of the deceased children living at the time of the death of the life tenant, as distinguished from those heirs of his deceased children living at the death

of such deceased children. He clearly had in mind that if one or more of his six children should die before the life tenant, leaving heirs, some one or more of such heirs of his children might also die before the life tenant died, and he therefore used the term "living" merely as indicating the heirs living or surviving at the death of the life tenant.

The foregoing is the only consistent interpretation, so far as we are able to see, of the words "living heirs." The word "living" is used twice in said clause of the will, and by every rule of interpretation, as well as by the context itself, it must be interpreted as having the same meaning both times. It is not questioned that the words "living children" used in the second clause mean children living at the death of the life tenant, and we are unable to see why the words "living heirs," in the same clause, can mean other than the heirs of the deceased children living at the death of the life tenant, and we must so interpret the words under the familiar rule of construction that words used in one part of a will must be understood in the same sense when used elsewhere in the same instrument, unless something in the context makes a different meaning imperative. (*Duryea* v. *Duryea,* 85 Ill. 41; *Jenks* v. *Jackson,* 127 id. 341; *Stevenson* v. *Stevenson,* 297 id. 338.) The word "living," twice used in said clause of the will, simply means "surviving" as used by the testator, and whether we use the term "living" or "surviving" preceding the word "heirs," that word is not narrowed or changed so as to authorize us to say that the word "heirs" means children or descendants. Had the testator intended to narrow the meaning of the word "heirs" and to use it in the sense of children or descendants, the proper and the only legal way to have accomplished that purpose would have been to use the ordinary legal words that are commonly employed for that purpose, such as "bodily heirs" or "heirs of their bodies," or words of similar import. In the case of *Glover* v. *Condell,* 163 Ill. 566, the language of the gift over is, that "in the event of

the death of any of my children without *living* heirs of their body," etc. It was held by this court that the words "without *living* heirs of their body" import a definite failure of issue, and that the language used refers to the death of any one of the children of the testator without heirs of his body, or issue, living at the time of his death. In that holding the words *"living* heirs" are held to mean living heirs, and not living children or living descendants. In other words, the word "living" had no effect whatever to change the meaning of the word "heirs" into children or descendants. The court's holding in that case amounted to a holding that the words "living heirs of their body" meant living children and descendants of the testator's children or living issue of such children, but it was the use of the words "of their body," following the word "heirs," that narrowed the meaning of the word "heirs" and caused this court to interpret the words "heirs of their body" to mean children or descendants, and the word "living," as is plainly seen, had no effect whatever in making such interpretation. In other words, if the words there used had been simply "without living heirs," the word "heirs" would have been interpreted to mean heirs general, and not heirs of their body or their children and descendants.

We are supported by all the authorities that we have examined in making the foregoing interpretation. The word "living," like "nearest," "next," "legal," "lawful" and "right," or other similar adjectives used to qualify or modify the word "heirs," has not been interpreted by the authorities in any case, so far as we can find, as having the effect to narrow the meaning of the word "heirs" following it so as to mean children, issue or descendants, unless other words are used in the context for that purpose. Accordingly it was held in the case of *Ryan* v. *Allen,* 120 Ill. 648, that the words "nearest heirs" should be construed to mean or include all those persons upon whom the law would in the first instance cast the inheritance upon the death of

the ancestor intestate, and it was there said that those who are heirs are necessarily "nearest heirs," and that "nearest heirs" can be no other than heirs general. Upon the same reasoning the words "lawful heirs" received a similar construction by this court, and were held to mean the same as if the word "heirs" simply had been used, for the very satisfactory reason that there can be no such thing in law as "unlawful heirs." (*Deemer* v. *Kessinger,* 206 Ill. 57; *Silva* v. *Hopkinson,* 158 id. 386.) For the same reason "legal heirs" received a similar construction in the case of *Carpenter* v. *VanOlinder,* 127 Ill. 42, and *Vangieson* v. *Henderson,* 150 id. 119. In the case of *Wool* v. *Fleetwood,* 136 N. C. 460, the provision in one item of the will was "that Leonard and Elizabeth shall own and occupy the property during their natural lives and at their death it shall go to their lawful heirs." It was argued before the court that the words "lawful heirs" in that item of the will should be construed as meaning the children of the first taker. The court in overruling this contention said: "There can be no such thing as an unlawful heir. The term 'lawful heirs' means the heirs designated by the law to take from their ancestor, and it cannot be construed as meaning the children of the first taker." The court held, therefore, that the case fell directly within the rule in *Shelley's case,* and that Leonard and Elizabeth were vested with a fee simple title to the property. It is plain to be seen that had the words "living heirs" been used in that will instead of the words "lawful heirs" the construction of the will would have been the same for the very striking reason given by the court that there can be no such a thing as an unlawful heir, and that the court, instead of using that sentence, would have said "there can be no such a thing as a dead heir," and the court's reasoning would have been entirely logical and absolutely correct. In Washburn on Real Property (vol. 1, 4th ed. *58,) it is said: "A limitation to one and his 'right heirs' is the same as to his 'heirs simply,' and a limitation directly

to the 'right heirs' of one carries a fee without adding the words 'and their heirs,' "—citing Coke's Lit. 10*a*, 22*b*, and other authorities.

Appellees rely on two cases as authority for construing the words "living heirs" to mean children or descendants: *Lee* v. *Roberson,* 297 Ill. 321, and *Wilson* v. *Wilson,* 261 id. 174. An examination of those cases will show clearly by their context that it was not possible to otherwise construe the words "living heirs." It was the use of other words in the context there that showed clearly that the testator did not mean to use the word "heirs" in its technical sense, and for that reason the words "living heirs" were held to mean living children or descendants. There is no such a showing in this record whatever and those cases are not applicable to the question. The authorities on this subject all support the doctrine that the word "heirs," when simply modified by such words as "right," "nearest," "next," "legal," "lawful" and "living," is not narrowed in meaning, and should not be interpreted as meaning children or descendants unless followed by other words, or other words are found in the context showing clearly that the word "heirs" could only have been used in the sense of children or descendants, and for the simple reason that when such modifying words are given their ordinary interpretation they do not add any characteristic to the word "heirs" that the word does not have when not so modified. In other words, the meaning is the same when the modifiers are used as when the modifiers are omitted.

The original opinion in this case has been modified slightly in the language used in the concluding paragraph so as to express more clearly who are the persons to take under the testator's will, and as modified it correctly expresses the law in this case in every particular.

Mr. JUSTICE CARTWRIGHT, dissenting:

In real estate law the word "heirs" is a technical word of limitation, but in this case, where there is a devise to the

children of the testator and an alternative devise in the event of the death of any of the children before the death of the life tenant, the words "their living heirs" are words of substitution, and persons coming within that designation take as purchasers. (*Ebey* v. *Adams,* 135 Ill. 80; *Tea* v. *Millen,* 257 id. 624.) The testator provided for the contingency of the death of a child or children, and upon the happening of such a contingency provided that the estate devised should go to their living heirs. The purpose of construction is merely to ascertain what was in the mind of the testator, and this is to be determined by the language which he used in his will. I do not agree with the statement that there is no context and no single word in the instrument tending to qualify in any degree the meaning of the word "heirs." In construing a will it is presumed that every word qualifying another word is intended by the testator to have some meaning. (*Tea* v. *Millen, supra.*) In a holding that the testator meant those persons who are made heirs by statute the word "living" is senseless and has no meaning or application, because those upon whom the law casts an intestate estate are all living, and the testator could not have intended to include only such as should be living. If the words "living heirs" are applied to children or descendants they have a meaning, and a natural one. It seems clear to me that the testator had in mind children and lineal descendants, only, and had no thought of collateral heirs generally. He not only provided that the property should be equally divided between the living children or their living heirs, but added after the substituted devise, "each of our children to share equal and alike," although he had already provided for an equal division.