ESTATE OF JOSEPH W. DAGER, DECEASED.

[No. 15,177; decided July 22, 1896.]

Wills—Meaning of the Word "Heirs."—Since a living person can have no heirs, a legacy to the "heirs" of a person living must be treated as void unless the word can be given some other than its technical meaning.

Wills—Lapse of Legacy.—Unless the clear intention of a testator requires it, a construction resulting in the lapse of a gift should be avoided.

Wills—"Heirs" Construed as "Children."—Where it appears from other expressions in a will that the testator used the word "heirs" to mean "children," it may be given that meaning.

Wills.—Where a Word is Used in a Particular Sense in one part of the will, it may be presumed that it is used in the same sense when employed in a subsequent part of the instrument.

Wills—Gift to Persons in Common.—A devise or legacy to two or more persons is presumed to vest in them an estate as tenants in common.

Wills.—Where a Testator Made a Bequest of $500 "to the heirs of George and William," brothers of his deceased wife, it was held that the bequest was intended to be given as an entirety to a single

class, namely, the heirs of George and William, and to whomsoever, at the time of the death of the testator, should come within that class as tenants in common, and that they should take equally, that is, per capita and not per stirpes.

Wills.—Where the Testator Made a Bequest of $500 "to the heirs of George and William," brothers of his deceased wife, and William was living at the time of the testator's death, it was held that the word "heirs" was used in the sense of "children," and that the bequest should be divided among the children of George and William per capita.

The will of the above-named decedent was admitted to probate, and letters testamentary issued to the California Safe Deposit and Trust Company, on October 2, 1894.

A petition for distribution was filed by the executor on May 15, 1896.

Gunnison, Booth & Bartnett and R. W. Hent, for the executor.

J. J. Lermen, for certain heirs.

Loewy & Gutsch, for certain other heirs.

COFFEY, J. Captain Joseph W. Dager died September 11, 1894, leaving a last will and testament dated July 14, 1894. Testator was at the time of the execution of his will of the age of seventy-three years. He had one brother and five sisters, all of them older than himself, and all of them being dead at the date of the execution of the will. He knew that his brother and three of his sisters left children, and these are mentioned in his will. His wife had been dead about thirteen years. For a long period of years he had heard nothing of his wife's relatives, residing in Germany, or his own, residing in the eastern states, and knew nothing definite about them. He had been a sailor and sea captain in early life, and had not engaged in that pursuit for a number of years before his death. He dictated the terms of his will to Mr. R. W. Hent, a practitioner of recognized skill and long and wide experience at the San Francisco bar, and insisted on referring to the children of his brother and sisters,

as well as the children of his wife's relatives, as "heirs." Mr. Hent complied with the letter of this request, and used the word "heirs" throughout, even though in the case of the legacies to the "heirs" of his brother and sisters the testator could have referred to them as children, knowing personally that there were such.

The will is as follows:

"In the name of God, Amen. I, Joseph W. Dager, of the City and County of San Francisco, State of California, of the age of seventy-three years, and being of sound and disposing mind, do make, publish and declare this my last will and testament, in manner following, that is to say:

"First—I give and bequeath to the heirs of my brother, Thomas Dager, late of Saugus, State of Massachusetts, deceased, the sum of two thousand dollars ($2,000).

"Secondly—I give and bequeath to the heirs of my sister, Mrs. Sarah Lord, late of Roxbury, State of Massachusetts, deceased, the sum of two thousand dollars ($2,000).

"Thirdly—I give and bequeath to the heirs of my sister, Mrs. Lucy Sanford, late of Framingham, State of Massachusetts, deceased, the sum of two thousand dollars ($2,000).

"Fourthly—I give and bequeath to the heirs of my sister, Mrs. Lois Harrington, late of Concord, State of Massachusetts, deceased, the sum of two thousand dollars ($2,000).

"Fifthly—I give and bequeath to Mrs. Caroline D. E. Grabe, my late wife's niece, the sum of fifteen hundred dollars ($1,500).

"Sixthly—I give and bequeath to Amelia Hoffman, wife of Charles Hoffman, and the adopted daughter of said Mrs. Caroline D. E. Grabe, the sum of one thousand dollars ($1,000).

"Seventhly—I give and bequeath to the heirs of Ludwig and Charlotta Hulsing, the father and mother of said Mrs. Caroline D. E. Grabe, late of Bunrode, Germany, deceased, the sum of five hundred dollars ($500).

"Eighthly—I give and bequeath to the heirs of Gottlieb Festing and Minna Festing, his wife, my late wife's sister, late of Hanover, Germany, deceased, the sum of five hundred dollars ($500).

"Ninthly—I give and bequeath to the heirs of Henry Eicke and Sophia Eicke, his wife, my late wife's sister, late of Gleidengen, Province of Hanover, Germany, deceased, the sum of five hundred dollars ($500).

"Tenthly—I give and bequeath to the heirs of George and William Knauer, brothers of my late wife, late of Misburg, Hanover, Germany, deceased, the sum of five hundred dollars ($500).

"Eleventhly—I give and bequeath to Mrs. Minna Marvin, of Sutter County, State of California, the sum of one thousand dollars ($1,000), and to her daughter, Caroline Freese Marvin, the sum of five hundred dollars ($500).

"Twelfthly—In case any of the said legatees hereinbefore named shall not be living at the time of my death, then I give and bequeath such deceased legatee's share to her heirs.

"Thirteenthly—I give and bequeath to the Laurel Hill Cemetery the sum of one thousand dollars ($1,000), in trust, to be expended in keeping my burial lot in good condition.

"Fourteenthly—I give, devise and bequeath all the remainder of my estate to the aforesaid legatees, except said Laurel Hill Cemetery, in the proportions of their aforesaid respective legacies.

"Fifteenthly—I hereby appoint the California Safe Deposit and Trust Company the executor of this my last will and testament, and I hereby revoke all former wills by me made.

"Lastly—I desire that my attorney, R. W. Hent, be retained to act as attorney for my estate.

"In witness whereof, I have hereunto set my hand, this 14th day of July, 1894.

"JOSEPH WARREN DAGER."

Attested in usual form and admitted to probate in due course of law.

The eighth provision of the will of said decedent is as follows:

"I give and bequeath to the heirs of Gottlieb Festing and Minna Festing, his wife, my late wife's sister, late of Hanover, Germany, deceased, the sum of five hundred dollars ($500)."

The tenth item of said will is as follows:

"I give and bequeath to the heirs of George and William Knauer, brothers of my late wife, late of Misburg, Hanover, Germany, deceased, the sum of five hundred dollars ($500)."

Gottlieb Festing, the husband of Minna Festing, is still living, and William Knauer, mentioned in the tenth item in said will, is also living.

The bequests are "to the heirs of Gottlieb Festing and Minna Festing," and also "to the heirs of George and William Knauer."

Schouler on Wills, section 542, says: "The word 'heirs' is flexible on the whole, and may denote 'next of kin' or 'heirs at law,' according to the nature of the property given, as well as next of kin in one sense or another. But what this word signifies is in all cases a question of intention; and if other expressions in the will and the whole context clearly indicate what the testator meant, and that his meaning was not according to the usual sense of 'heirs' as above, that intention must prevail. And whether in accordance with the presumption or against it, we often find 'heirs' construed by a court where the sense permits as though it were written 'children.' For 'issue,' 'children,' 'heirs' are constantly interchanged in testaments."

In the will of decedent, according to the argument of the executor, there is nothing to show that the testator used the word "heir" in anything else than its technical meaning. Elsewhere throughout the will the word is used correctly, and in the present clauses, the executor insists, it is evident that the testator regarded Gottlieb Festing, and also William Knauer, as dead.

"Technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention": Civ. Code, sec. 1327.

Section 1334 of the Civil Code defines persons in whom testamentary disposition vests property under a general disposition to "heirs."

In both the eighth and tenth clauses of the will the devise is to persons not in existence, for Gottlieb Festing and William Knauer, being alive, legally have no heirs, consequently these legacies must be treated as void legacies unless, under the intimation of this court, the eighth bequest to the heirs

of Gottlieb and Minna Festing shall be construed as though it were written "children."

George and William Knauer are brothers, and, William being alive, counsel for the executors argue that the legacy to his heirs must be treated as void.

A void legacy is defined in 13 American and English Encyclopedia of Law, page 28: "A void legacy or devise is one which never has had any legal existence; a lapsed legacy or devise is one which, originally valid, afterward fails, because the capacity or willingness of the donee to take has ceased to exist before he obtained a vested interest in the gift."

Sections 1332, 1333, of the Civil Code define the effect of a residuary bequest on void or lapsed legacies.

Section 1332: "A devise of the residue of the testator's real property passes all the real property which he was entitled to devise at the time of his death not otherwise effectually devised by his will"; and section 1333 is to the same effect, except that it refers to personal property.

The bequests in both cases are to the heirs of two persons. The question is whether these heirs would take jointly or as tenants in common.

Schouler on Wills, section 566, discussing the question of joint tenancy and tenancy in common, states as follows: "The point of distinction here to be noted is that, in case of a joint tenancy, the failure of the devise or bequest as to any one of the parties named will carry the gift to the other or others by force of survivorship, that striking incident of relation; but when, on the other hand, the gift is to tenants in common, the death of one of them before the testator, or the failure of his share from some other cause, will produce a lapse with the usual result in favor of heir, next of kin, or residuary devisee or legatee, as the case may be."

Our codes, however, have abolished this presumption of a joint tenancy, and interests, when owned by several persons, are presumed to be in common.

Section 683, Civil Code: "A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants."

Section 685, Civil Code: "An interest in common is one owned by several persons, not in joint ownership or partnership."

Section 686, Civil Code: "Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, as provided in section 683, or unless acquired as community property."

Section 1350, Civil Code, provides: "A devise or legacy given to more than one person vests in them as owners in common."

The interest then being in common, the executor contends that the effect of the lapse of the legacy to the heirs of William Knauer is to strike $250 from that clause, and to throw that sum into the residuary fund, to be distributed under the provisions of the will relating to the remainder of decedent's estate.

The executor submits that the legacies above referred to, and particularly the legacy to the heirs of William Knauer, deceased, are to be treated as lapsed legacies, and that the same should become a portion of the residuum of said estate, to be distributed under the provisions of the will of said decedent.

Mr. Lermen, counsel for certain heirs at law, confines his contention to the tenth provision of the will of deceased, as that presents all the questions that can arise in the eighth. The tenth provision is as follows: "I give and bequeath to the heirs of George and William Knauer, brothers of my late wife, late of Misburg, Hanover, Germany, deceased, the sum of $500."

The first question that presents itself is whether this legacy will go to two classes, the heirs of George and the heirs of William Knauer, or whether only one class is created, all the members of that class taking per capita, the latter position being taken by the attorneys for the German heirs.

There are several cases similar to the one at hand, wherein it is held that there are created two classes, each taking one-half, and the members of each class taking per stirpes and not

per capita: Bassett v. Granger, 100 Mass. 348; Fissel's Appeal, 27 Pa. 55.

Especially is this true in cases where the descendants or next of kin of the two parties named must necessarily belong to a different class: See 29 Am. & Eng. Ency. of Law, 428, and cases cited in note 1.

For the purposes of the inquiry, it may therefore be taken that this provision of the will might as well have been written: "I give and bequeath to the heirs of George Knauer $250, and to the heirs of William Knauer $250."

William Knauer is living, and the question therefore is, How shall be construed the legacy to his heirs? There can be no doubt that, under the sections of the code cited by counsel for the executor, the legacy supra, if it lapses at all, lapses to the entire estate—in other words, that a tenancy in common is created. The chief difficulty, of course, is that a living man can have no heirs.

If the word "heirs" is to be taken in its technical sense, of course the legacy lapses. The first and great object is to inquire what was the intention of the testator, and, looking at the will as a whole, the word should be construed as meaning "children." In the first place, the testator gives to the heirs of each of his three sisters and his brother, all of them deceased, the sum of $2,000. There can be no possible doubt that in this case he meant their descendants. He knew his sisters and brother were dead, and he knew that they had children. That much is in evidence. It is not unreasonable to suppose that in using the word "heirs," later on in the instrument, he used it in the same sense. In addition, it will be noticed that he singles out the brothers and the sisters of his deceased wife, giving to the heirs of them all some specified amount.

A case on all-fours with the present one is Lott v. Thompson, 36 S. C. 38, 15 S. E. 278. Besides being well considered, it fits in well with the facts of this case.

In Lott v. Thompson the testator directed that "the balance of my property to be equally divided between my heirs only Betsy and Martha, the heirs of their body to have an equal share with the rest of my heirs." Betsy and Martha were living at the death of the testator. The lower court

held, inasmuch as Betsy and Martha were still living, the plaintiffs were not the heirs of their body under the maxim, "Nemo est haeres viventis."

The court said: "It is quite true that in a strict sense no person can sustain the character of 'heir' in the lifetime of the ancestor, according to the familiar maxim, 'Nemo est haeres viventis'; but it is always open to inquiry whether the testator used the words according to the strict and proper acceptation, or in a more inaccurate sense, to denote 'children,' 'next of kin,' etc.: Bailey v. Paterson, 3 Rich. 158. In discussing that case Chancellor Dunkin said: 'The testator takes notice that the ancestor was alive at the making of his will. There can be no doubt that the testator did not intend that the words "lawful heirs" should be taken in their technical meaning, but he intended to designate a class of persons who could take immediately on his death,' etc. We think it is manifest that in this case the testator did not employ the word 'heirs' in its technical sense. The tenor of the will shows it. The word 'heirs' occurs four times in the will, and in every instance it is used as synonymous with 'children.'

"Precisely so in the case at bar. The testator, in at least four instances, viz., the bequest to the heirs of his three sisters and his brother, used the word 'heirs' as synonymous with 'children.' And the court, in concluding this branch of the case, said: 'The maxim, "Nemo est haeres viventis" has no proper application whatever to the case': See Bailey v. Paterson, supra; Ramsey v. Joyce, McMull. Eq. 252, 37 Am. Dec. 550, and Lemacks v. Glover, 1 Rich. Eq. 141."

It will be noticed also that in the cases just quoted, as well as the one now in hand, the heirs of A and B must certainly constitute separate classes, provided the word "heirs" means "children," as A and B in the cases cited were sisters, and in the case at hand are brothers.

The will further provided that "the heirs of their body to have an equal share with the rest of my heirs," and the court, being called upon to construe this portion of the will as well, held that there were two classes, the members of each class taking per stirpes and not per capita.

The following authorities bear out in some way the propositions hereinabove set forth: Ballentine v. Wood, 5 Am.

Prob. Rep. 244, 249; Kelley v. Vigas, 5 Am. Prob. Rep. 315; Hughes v. Clark, 16 Ky. Law Rep. 41, 26 S. W. 187; Boyd v. Robinson, 93 Tenn. 1, 23 S. W. 72; Johnson v. Brasington, 68 N. Y. St. Rep. 44, 34 N. Y. Supp. 200; Stewart v. Powers, 9 Ohio C. C. 143.

Mr. Lermen arrives at the conclusion from these cases that the testator intended to give to the children of William Knauer $250, and thinks he has pointed out a way to escape a lapsed legacy.

There is no good reason why there should be attributed to the testator (who, according to the evidence of his attorney, Mr. R. W. Hent, insisted on dictating the will in his own language) the intention of introducing into the instrument a quantity of most complicated legal problems. When a layman makes a bequest to the heirs of a man and his wife—whether or not he is aware of the death of both, or either, or of their having children—the presumption certainly is that he means the issue of their marriage. The testator had doubtless been informed by his wife that her sister Minna Festing had children of her marriage to Gottlieb Festing. The testator knew that his brother and his sisters had children, yet he speaks of these children in every instance as "heirs."

The bequest of $500 to the heirs of George Knauer and William Knauer was intended to be given as an entirety to a single class, viz., the heirs of George and William Knauer, and to whomever, at the time of the death of the testator, should come within that class, as tenants in common.

Each of the bequests numbered 1, 2, 3, 4, 7, 8, 9, is given to a class. And so the testator must have intended this bequest of $500 to go as an entirety to the heirs of George and William Knauer as a single class. If he had wanted to divide the bequest in halves, to wit, per stirpes, he would have said: "I give $250 to the heirs of George Knauer." "I give $250 to the heirs of William Knauer." But, on the contrary, he intended to give and did give $500 to the heirs of both taken together as one class.

Section 1350, Civil Code, which provides that "a devise or legacy given to more than one person vests in them as owners in common," nullifies the proposition that it was intended

that the heirs of George Knauer and William Knauer should take per stirpes.

The law says they shall take as owners in common; in other words, they shall take equally. So that, if William Knauer had died leaving two children, they would have taken per capita with the seven children of George Knauer.

It follows that, there being no bequest per stirpes, no part of the bequest can lapse as long as there are any persons in esse answering to the designation of heirs of George Knauer.

Unless the clear intention of the testator makes it necessary, a construction resulting in a lapse should be avoided.

The cases cited and quoted by Mr. Lermen bear out the view here expressed, that the word "heirs" in this case must be construed to mean "children," and not heirs in a technical sense. The maxim, "Nemo est haeres viventis," does not apply to this case.

The case, furthermore, differs from the one discussed in Estate of Pfuelb, 48 Cal. 643, where a legatee died during the testator's lifetime, and the legacy, being claimed by a stepson, not a relation, of the deceased legatee, was held to have lapsed. The legatees in the case at bar are claiming in their own right, not as successors to another's right.

But the court disagrees, for the reasons stated, with Mr. Lermen in his contention that the legacy should be divided so as to give $250 to the heirs of William and $250 to the heirs of George Knauer; and, in the view which the court has taken on this point, it is clearly supported by the "Answer" to the question propounded in the "San Francisco Law Journal" of Saturday, June 13, 1896, prepared for publication by authority of the court, which answer refuses assent to the notion that persons naturally forming and designated as a group by reason of their relationship should, for the same reason, be treated as units in the division of a legacy given to them. The court is satisfied with the conclusion there reached, that, under the law of California, all the persons entitled to take as legatees under the provision of the will referring to them became tenants in common, without any regard to the closeness or remoteness of the relationship existing between some of them. The same reasoning applied to the case at bar will result in a per capita division of the $500 between all the

persons intended to be embraced in the description of "heirs of George and William Knauer, brothers of my late wife"; and so the court determines and decides the question presented for construction of the eighth and tenth clauses of the will.

---

The Words "Heirs," "Issue," and "Children," when found in wills, may be construed interchangeably, where necessary to effectuate the intention of the testator: Strawbridge v. Strawbridge, 220 Ill. 61, 110 Am. St. Rep. 226, 77 N. E. 78; Griswold v. Hicks, 132 Ill. 494, 22 Am. St. Rep. 549, 24 N. E. 63; Smith v. Smith, 130 Ga. 532, 124 Am. St. Rep. 177, 61 S. E. 114.