FRANK C. HAGEMAN *et al.*

*v.*

FREDERICK C. HAGEMAN *et al.*

*Filed at Ottawa June 15, 1889.*

1. WILLS—*quantity of estate devised—whether a fee.* A testator devised his lands to his four sons, and the will then provided that the said sons "shall neither of them sell or mortgage any of the lots, * * * but the same shall go to their heirs after them:" *Held*, that the sons of the testator took the fee in the estate so devised.

2. SAME—*the rule in Shelly's case—as applicable to a devise.* The rule in *Shelly's case* is a rule of property in this State, and its application to the particular case depends, not upon the quantity of estate intended to be given to the ancestor, but upon the estate devised to the heir. When the devise is to heirs generally, the rule applies, and is held to conclusively express the intention of the testator, and will necessarily govern and control in determining the estate devised.

3. SAME—*"heirs"—as a word of purchase.* Neither the express declaration, first, that the ancestor shall have only an estate for life, and no longer; nor, second, that he shall have only an estate for life in the premises, and that after his decease it shall go to the heirs of his body, and in default of such heirs vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of the testator; nor, third, that the ancestor shall be tenant for his life, and no longer, and that it shall not be in his power to sell, dispose or make way with any part of the premises, will change the word "heirs" into a word of purchase.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

Mr. CHARLES D. CLARK, for the appellants:

It is evident, from the language of the will, that it was the intention of the testator to tie up the property in controversy during the lives of the first takers,—that is, that the said four sons should have a life estate only, and their respective children become the owners in fee upon the expiration of the life interests of their parents. The testator is particularly careful to insert a provision that the devisees should not sell or mort-

gage the premises devised, but that the same should go to their heirs after them. The intention of the testator is here clearly expressed, and unless the doctrine of the rule in *Shelly's case* defeats such intention, the decree must be reversed.

This court has repeatedly held, that where the intention of the testator was clearly expressed, such intention must prevail, notwithstanding the rule in *Shelly's case*. *Belslay* v. *Engel*, 107 Ill. 182; *Butler* v. *Huestis*, 68 id. 594; *Bowers* v. *Porter*, 4 Pick. 198.

Such construction of a will should be adopted, if it consistently may be, as will uphold the intention of the testator. *Lunt* v. *Lunt*, 108 Ill. 307; *Osborn* v. *Bank*, 116 id. 130; *Fussey* v. *White*, 113 id. 637.

Messrs. E. H. & N. E. GARY, for the appellees:

The four sons took the title to the lots in fee, and the rule in *Shelly's case* applies. 4 Kent's Com. 215; Washburn on Real Prop. (5th ed.) 652; *Warner* v. *Sprigg*, 62 Md. 14; *Ryan* v. *Allen*, 120 Ill. 648; *Murfitt* v. *Jessop*, 94 id. 158; *Leiter* v. *Sheppard*, 85 id. 242; *Brownfield* v. *Wilson*, 78 id. 468; *Baker* v. *Scott*, 62 id. 86; *Pool* v. *Blakie*, 53 id. 495; *Rawson* v. *Rawson*, 52 id. 62; *Brislain* v. *Wilson*, 63 id. 173.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

This was a bill filed in the circuit court of Cook county, by Frederick C., George W., Franklin J. and Louis B. Hageman, against the minor children of each, respectively, for partition of certain lots in what is known as McGrath's addition to Chicago, and praying a construction of the last will and testament of Frederick C. Hageman, deceased, father of the complainants. It is alleged, that by said will the property sought to be partitioned was devised to the complainants in fee. A guardian *ad litem* was appointed for the defendants, who answered, admitting the making of said will, the death of the testator, and the admission of the will to probate, but denying

that the complainants were the owners of the real estate devised, in fee, and averring, that by the terms of the will the defendants, children of complainants, became owners of the title in fee to the lands in controversy, subject only to a life estate in complainants, and the further possibility of letting in such other children of complainants as might thereafter be born, etc. Upon the hearing, the court construed the will as vesting the fee simple title in the complainants, and ordering partition thereof accordingly.

The third clause of the will of Frederick C. Hageman, deceased, and which is the only portion of the will involved in this controversy, is as follows:

"I give and devise unto my sons, Frederick C. Hageman, George W. Hageman, Franklin J. Hageman and Louis B. Hageman, lots 10, 11, 13, 14 and 15, as subdivided by plat 'A,' in block 1, in McGrath's addition to Chicago, Illinois; but the said Frederick C. Hageman, George W. Hageman, Franklin J. Hageman and Louis B. Hageman shall neither of them sell or mortgage any of the lots last above mentioned, but the same shall go to their heirs after them,—that is to say, the lots which they take,—which shall be determined by lot or agreement between themselves."

The question presented is, whether, under this language of the will, the complainants, sons of the testator, took an estate for life in the lots devised, or took the estate in fee. It is contended that the language of the testator, that they "shall neither of them sell or mortgage any of the lots" devised, "but the same shall go to their heirs after them," operates as a limitation upon the devise to the sons, so that they took a life estate only, and their children *in esse* became the owners in fee, subject to such life estate and the possibility of letting in other children of the said sons of the testator thereafter born, and answering the same description. The language employed in the first part of this clause of the will is sufficiently comprehensive to create an estate in fee in the sons. It is to be

observed, that in the words following there is nothing which designates any particular person, or class of persons, as re-mainder-men. The devise is to the sons, and to their heirs after them. It is urged, however, that it was manifestly the intention of the testator to deprive his sons of the power of alienation, and to vest in them an estate for their lives, only, and that the intention of the testator, as thus evinced, must control, and that the rule in *Shelly's case* having the effect of defeating the intention of the testator, as thus shown, can not be applied.

It is said by Kent, (4 Com. p. 233,) in commenting upon the decision in *Perrin* v. *Blake*, 4 Burr. 2579: "The result of that famous controversy tended to confirm, by the weight of judicial authority at Westminster Hall, the irresistible pre-eminence of the rule, so that even the testator's manifest intent could not control the legal operation of the word 'heirs,' when standing for the ordinary line of succession as a word of lim-itation, and render it a word of purchase. If the term 'heirs,' as used in the instrument, comprehended the whole class of heirs, and they became entitled, on the death of the ancestor, to the estate, in the same manner and to the same extent, and with the same descendible qualities, as if the grant or devise had been simply to A and his heirs, then the word 'heirs' is a word of limitation, and the intention will not control the legal effect of the word." This doctrine has received repeated recognition by this and other courts where the rule in *Shelly's case* is in force, so that we do not deem a review of the author-ities necessary. See *Baker* v. *Scott*, 62 Ill. 88; *Wicker* v. *Ray*, 118 id. 472; *Ryan* v. *Allen*, 120 id. 648; *Van Olinder* v. *Car-penter*, 127 id. 42. In the case last cited, the authorities are collated and reviewed.

Mr. Preston, in his work on Estates, (Vol. 1, pp. 281-283,) speaking of the legal effect, under the rule in *Shelly's case*, of the word "heirs" where it is used as designating persons who would take in succession, says: "In wills, the rule applies

generally, and without exception, to the several limitations, as often as the gift to the heirs is without any expression of qualification," and that "neither the express declaration,—first, that the ancestor shall have an estate for his life, and no longer; nor, secondly, that he shall have only an estate for life in the premises, and that after his decease it shall go to the heirs of his body, and in default of such heirs vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of the testator; nor, thirdly, that the ancestor shall be tenant for his life, and no longer, and that it shall not be in his power to sell, dispose or make way with any part of the premises, * * * will change the word 'heirs' into a word of purchase."

The rule in *Shelly's case* is a rule of property in this State, (*Baker* v. *Scott, supra,* and *Ryan* v. *Allen, supra,*) and its application to the particular case depends, not upon the quantity of estate intended to be given to the ancestor, but upon the estate devised to the heir. When the devise is to heirs generally, the rule applies, and is held to conclusively express the intention of the testator, and will necessarily govern and control in determining the estate devised, notwithstanding the expression of an intention on the part of the testator that the ancestor shall take a less estate than the fee. The devise, here, must therefore be treated as if it were to the sons of the testator and their heirs, without qualification, in which event it is clear the sons would take the fee in the estate devised. See *Van Olinder* v. *Carpenter, supra.*

The decree of the circuit court, being in conformity with the views here expressed, must be affirmed.

*Decree affirmed.*