BENJAMIN CARPENTER, ·Appellee, *vs.* KATHERINE HUB-
BARD, Appellant.

*Opinion filed June 16, 1914.*

1. WILLS—*rule where there are valid and invalid portions of
will.* Where valid and invalid portions of a will are so related to
the general scheme of the testator as to be interdependent, so that
they cannot be separated without doing violence to the testament-
ary plan, the entire disposition of the estate must fall, but if the
invalid portions can be separated from the valid ones and still give
effect to the testamentary scheme, the invalid portions may be dis-
regarded and the valid ones upheld; and this rule is not affected
by the relative positions of the different clauses of the will.

2. SAME—*when invalid provision may be disregarded.* Where
the third and fifth clauses of a will have the same declared object
of vesting the fee in remainder in the heirs of the husband of the
testatrix, but they differ only as to the time of the vesting of the
remainder, the earlier clause fixing the time at the death of the last
survivor of the children of the testatrix whereas the later clause
fixes the time at the death of all the children and all the descend-
ants of the children, which renders such clause invalid as creating
a perpetuity, the later clause may be disregarded and the earlier
one upheld.

3. SAME—*effect of rule in Shelley's case.* Under the rule in
*Shelley's case,* if an estate for life is granted by any instrument
and in the same instrument a remainder is limited, either medi-
ately or immediately, to the heirs of the life tenant, the life tenant
takes the remainder as well as the life estate; so, also, where
there is a limitation to one for life and then to another for life,
with remainder in fee to the heirs of the first life tenant, the es-
tate in remainder vests at once in the first life tenant.

4. SAME—*the sense in which the word "heirs" is used is deter-
mined from the will itself.* The sense in which the words "heirs"
or "heirs-at-law" are used must be determined from the whole will,
but unless it clearly appears that they have been used in an un-
usual sense they must be given their technical meaning, as denot-
ing the whole of the indefinite line of inheritable succession.

5. SAME—*when rule in Shelley's case applies.* Where the tes-
tatrix devises the fee simple title to the whole estate to trustees in
trust for her husband for life with power to appoint by will, and
then upon trust for her children, equally, for their lives and the
life of the survivor, with an ultimate gift over, upon the death of
the survivor, to the heirs of the husband, the estate of the hus-

band and the estate in remainder to his heirs are both equitable estates, and the rule in *Shelley's case* applies giving the husband the equitable estate in remainder as well as the equitable life estate. (*Johnson* v. *Askey*, 190 Ill. 58, and *Bond* v. *Moore*, 236 id. 576, distinguished; *Kellett* v. *Shepard*, 139 Ill. 433, followed.)

· VICKERS, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

ALBERT M. KALES, for appellant.

WILLIAM D. BANGS, guardian *ad litem*, (MECHEM & BANGS, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This bill was filed in the circuit court of Cook county by Benjamin Carpenter, the only surviving trustee under the last will and testament of Helen P. Hubbard, for the purpose of obtaining a construction of the will and directions in regard to the distribution of the estate. Katherine Hubbard, daughter and only surviving child of the testatrix, and the collateral kindred of Gilbert Hubbard, Sr., who was the husband of the testatrix and the father of Katherine, were made defendants. The chancellor construed the will, and found that Katherine Hubbard was entitled only to the rents, issues and income from the estate during her life, and that at her death the collateral next of kin of her father, Gilbert Hubbard, Sr., would be entitled to the remainder. Katherine Hubbard has prosecuted this appeal from that decree.

The testatrix died November 20, 1879, leaving surviving her husband, Gilbert Hubbard, Sr., and three children, Henry Hubbard, Gilbert Hubbard, Jr., and the appellant, as her only heirs-at-law. Gilbert Hubbard, Sr., died in 1881. Henry Hubbard and Gilbert Hubbard, Jr., each died unmarried and without issue in 1896 and 1903, respectively. Appellant is the only surviving child or descendant of the

testatrix. The estate of Helen P. Hubbard consisted entirely of real estate situated in Cook county, some of which has since, by virtue of the provisions of her will, been converted into money and invested by the trustees. Appellant contends that she is entitled to an equitable life estate and an equitable interest in remainder in the entire estate, while, on the other hand, the infant collateral kindred of Gilbert Hubbard, Sr., who would be among his heirs-at-law had he died without issue, through their guardian *ad litem* contend that appellant is entitled only to an equitable life estate, and that the collateral next of kin of Gilbert Hubbard, Sr., at her death will take the estate as a remainder in fee.

The only controversy here involves a construction of the last will and testament of Helen P. Hubbard. That portion of the will necessary to a determination of the questions involved consists of a portion of item 2, which is as follows:

"I give, devise and bequeath all my estate, real and personal, of whatever name or nature, to my beloved husband, Gilbert Hubbard, and my friends George B. Carpenter and James C. Brooks, both of Chicago, in said county, and the survivor or survivors of them, to have and to hold nevertheless upon the trusts following, that is to say:

"(1) To pay over to the said Gilbert Hubbard the net rents, issues and profits thereof during his natural life on his 'own receipt to be given therefor only, or my said trustees, or the survivor of them, in their discretion may, in lieu thereof or of any part of said rents, allow him, the said Gilbert Hubbard, or any one or more of my children, to occupy free of all rents, or at such rent, nominal or otherwise, as they shall appoint, the whole or any portion of my real estate for such time or times during the lifetime of the said Gilbert Hubbard, or on such condition as they, the said trustees, or the survivor of them, may see fit.

"(2) To subdivide, plat, sell, convey, manage and lease any or all of my said real estate, or any part or parts there-

of, as the same may seem to them most for the interest of those beneficially interested, building and re-building thereon if it seem best, and to invest and re-invest the net proceeds, income and profits thereof not otherwise appropriated herein, and, if need be, mortgage the same, or any part thereof, to raise money to protect the same or build or rebuild thereon, or for any of the purposes hereinafter named.

"(3) On the decease of my said husband, Gilbert Hubbard, in like manner to continue said trusts, with a view to the fair, equitable and equal distribution of the benefits of my said estate among my children, and the survivor or survivors of them, and their descendants, such survivor or survivors of my children, and the surviving descendant of any deceased child or children, to succeed to and take the benefits and shares of any deceased child or children, in case of the decease of any of my children during the continuance of this trust, leaving no child or children him, her or them surviving, or in case of the decease of any of my children leaving descendants him, her or them surviving, and all the descendants of such deceased child or children die before these trusts determine, and children in all cases to take the share which their parents would take if living, *per stirpes* and not *per capita.* But this trust shall not continue longer than until the decease of the last survivor of my children, when the said estate, and all accumulations thereof, shall forthwith vest in the heirs-at-law of my husband, Gilbert Hubbard, unless and except as my said husband, Gilbert Hubbard, shall otherwise by deed or will have appointed when the same, or any part or portion thereof, shall be conveyed by the said trustees, or the survivor or survivors of them, or their successors in said trust, to such person or persons and upon such trust or trusts, or otherwise, as he, my said husband, Gilbert Hubbard, shall have so appointed.

"(4) On the arrival of my son Harry at the age of twenty-five years, if my said husband shall not then be liv-

ing, or on the decease of my said husband thereafterwards, then, if the said Harry shall elect, the said trustees, or the survivor or survivors of them, or their successors in the said trust, shall on the written request of the said Harry, if made within six months thereafter, separate and set apart, divide and convey to him, the said Harry, two-thirds of one-third (being two-ninths) of the whole property, to have and to hold to him, his heirs and assigns forever: *Provided,* neither my said daughter and all her descendants, nor my son Gilbert and all his descendants, shall have deceased before that time, in which event (that is, in the event of the decease of either my said daughter and all her descendants, or my said son Gilbert and all his descendants, before that time,) the amount to be so set apart, divided and conveyed to my said son Harry as above in this clause provided, shall be two-thirds of one-half (being two-sixths) of the whole of my property, and if both my said daughter and my son Gilbert, and all their and each of their descendants, shall before that time have deceased, then the amount to be set apart, divided and conveyed to my said son·Harry, as aforesaid, shall be two-thirds of my said property and the rents, issues and profits thereof accumulated, as aforesaid. And when my said son Gilbert shall arrive at the age of twenty-five years there shall likewise be set off, separated, divided and conveyed to him a portion equal to that set apart and conveyed to Harry, as aforesaid; and if my daughter and all her descendants shall have deceased after said division to Harry and before said division to Gilbert, as aforesaid, the amount so set apart and conveyed to Gilbert shall be two-sixths of my estate, and an amount shall then also be likewise set apart and conveyed to Harry sufficient, with the amount previously set apart and conveyed to him, as aforesaid, to make the whole set apart and conveyed to him two-sixths of my property, or equal to the portion so divided and conveyed to Gilbert. But if my son

Harry shall not, within six months after the time above in this clause provided for said division and conveyance to him so elect and request, then there shall be no such division and conveyance, except at the election of my said trustees, until my son Gilbert shall, or would if living, attain the age of twenty-five years, and then, if my said husband shall not then survive or upon his decease thereafterwards, (if my said daughter and all descendants of her shall not before that time have deceased,) there shall be set off, separated, divided and conveyed to each of my said sons, Harry and Gilbert, two-ninths, or to the survivor of them (either of them and all his descendants having deceased) two-sixths, of my said property in severalty, to have and to hold to them or him and their or his respective heirs and assigns forever, but if prior to that time my said daughter and all her descendants shall have deceased, then there shall be set apart, divided and conveyed to my two sons, respectively, one-third of said property to each, or to the survivor of them (the other and all descendants of him having before that time deceased) two-thirds of the said property, and the rents, income and profits thereof accumulated, as aforesaid, due respect in the said division or divisions being had to any advancements which may have been made to them, or either of them, under the terms of this will, as hereinafter provided.

"(5) After the decease of my said husband, Gilbert Hubbard, to pay over to my children now living, or to the survivor or survivors of them, and any child or children of my deceased child or children, or to their respective guardians, the said net rents, profits and income of my estate, share and share alike, the said child or children of any deceased child taking the parent's share, *per stirpes* and not *per capita,* until my sons, or the survivor of them, may have had divided and conveyed to them or him parts of said estate as hereinbefore provided, and after such division or

divisions to continue to pay my said daughter the net rents, income and profits of her proportion of said property unimpaired by said divisions, and to my two sons, respectively, or the survivor of them, the net rents, income and profits of their or his proportion remaining in said estate undivided, as the case may be, during the natural lives of my said daughter and sons, respectively, taking their several and individual receipts therefor, and not otherwise, so that the same shall not be liable for debts by them contracted, and afterwards to any child or children of them, my said children, respectively, and their descendants, or their respective guardian or guardians, as the case may be, children in all cases taking the parent's share, *per stirpes* and not *per capita,* during the continuance of this trust: 'Provided, that in case of the decease of any or either of my said children, and all their, his or her descendants, during the continuance of this trust, the share or shares of the rents, incomes and profits of my estate given hereby to such child or children shall from and after that time be paid by my said trustee to my surviving child or children and the surviving children or descendants of any deceased child, or their respective guardian or guardians, children in all cases taking the share or portion which their parents would take if living, *per stirpes* and not *per capita,* due regard being had to advancements, if any, as provided by clause 3, aforesaid, of this item of my will: *Provided also,* that on the decease of my said husband, Gilbert Hubbard, and all my said children, and all the descendants of my said children, and each of them, then the said trusts shall determine, and the said estate remaining undivided, and all accumulations thereof, shall at once vest in the heirs-at-law of my said husband, Gilbert Hubbard, unless and except as my said husband shall otherwise by deed or will appoint, when the same, or any part or portion thereof, shall be conveyed by the said trustees, or the survivor or survivors of them, or their successors in said trust, to such person or persons

263 — 37

and upon such trust or trusts, or otherwise, as he, my said husband, Gilbert Hubbard, shall so appoint."

In the view we take it will be necessary to discuss but two of the contentions made: (1) That the will is void because it violates the rule against perpetuities; and (2) that under the rule in *Shelley's case* Gilbert Hubbard, Sr., took the equitable interest in remainder in the trust estate.

A comparison of clauses 3 and 5 of said item 2 of the will discloses that there is a repugnancy between these two clauses as to when the trust is to terminate. Clause 3 provides that the trust "shall not continue longer than until the decease of the last survivor of my children, when the said estate, and all accumulations thereof, shall forthwith vest in the heirs-at-law of my husband, Gilbert Hubbard." The provision in clause 5 for the determination of the trust is, "that on the decease of my said husband, Gilbert Hubbard, and all my said children, and all the descendants of my said children, and each of them, then the said trusts shall determine" and the estate in remainder shall vest in the heirs-at-law of Gilbert Hubbard, Sr. It will be observed that under clause 3 the trust is to determine upon the death of the last survivor of the children, whereas under clause 5 it is to determine upon the death of all the children and all the descendants of such children. The devise in remainder to the heirs of Gilbert Hubbard, Sr., under clause 5 is void, as it violates the rule against perpetuities. This is not seriously controverted by the guardian *ad litem.* Appellant contends, however, that clause 5, being the last expression of the testatrix, must prevail over clause 3, and that, inasmuch as clause 5 is invalid, the entire devise over to the heirs of Gilbert Hubbard, Sr., fails and appellant is entitled to the whole estate as intestate property. Clause 5 is thus used to defeat clause 3, and then the rule against perpetuities is invoked to destroy clause 5.

The rule is well established that where valid and invalid portions of a will are so related to the general scheme of

the testator as to be interdependent, so that they cannot be separated without doing violence to the testamentary plan, the entire disposition must fail. (*Eldred* v. *Meek,* 183 Ill. 26; *Lawrence* v. *Smith,* 163 id. 149; *Reid* v. *Voorhees,* 216 id. 236; *Johnson* v. *Preston,* 226 id. 447.) The converse of this rule is equally well established, that where the invalid portions can be separated from those which are valid and still give effect to the general testamentary scheme, the invalid clauses will be disregarded and those that are valid upheld. (See cases cited *supra.*) This rule is not affected by the relative positions of the different clauses in the will. In cases of repugnancy between different clauses, some of which are valid and some invalid, the question is whether the invalid clauses can be rejected and the general testamentary intent carried out by giving effect to the valid clauses. The general testamentary plan of the will before us was to provide a life estate for testatrix's husband, and for her children after his death and the descendants of such of her children as may have died leaving issue, until the death of the last survivor of her children, when, under the third clause of the will, the estate was to vest in fee in the heirs of her husband. Under clause 5 the same disposition is made of the property as by clause 3, and the only repugnancy between the two clauses relates to the time of the vesting of the remainder. The declared purpose of the testatrix in both clauses of the will is that the heirs of her husband shall have the fee in remainder. It would seem to be strangely illogical to hold that because the remaindermen could not, under the law, take at the time designated in the fifth clause they shall not take at all, when there is another period expressly designated in another clause of the will when the remainder may legally vest.

The principal contention of appellant is, that under the rule in *Shelley's case* her father took an indefeasible equitable interest in remainder in the trust estate, which, by

reason of certain *mesne* devises and conveyances from her father and two brothers, has become vested in her.

By the provisions of the will above quoted, which are the only ones having any bearing upon the questions involved, a fee simple title to the whole estate is given to the trustees upon trust for the husband, Gilbert Hubbard, Sr., for life with power to appoint by will, and then upon trust for the children equally for their lives and the life of the survivor, with an ultimate gift over, upon the death of such survivor, to the heirs-at-law of Gilbert Hubbard, Sr. Appellant's argument in support of her contention that the rule in *Shelley's case* applies is, that by the will of Helen P. Hubbard her husband, Gilbert Hubbard, Sr., was given an equitable life estate, and the ultimate equitable estate in remainder was by the will limited to his heirs-at-law, and that since both estates are equitable, and therefore of the same quality, the rule in *Shelley's case* applies and Gilbert Hubbard, Sr., took the equitable estate in remainder under the will, and that the words "heirs-at-law of Gilbert Hubbard" mean those persons who at the time of his death would answer the description of his heirs-at-law. Appellant does not contend that there is a merger of the life estate in her equitable estate in remainder, but concedes that no merger has occurred because of the spendthrift trust attached to her life estate. As the trustees clearly have the fee simple title upon the trusts described, it follows that both the life estate limited to Gilbert Hubbard, Sr., and the ultimate estate in fee given to his heirs are equitable estates. (*Lord* v. *Comstock,* 240 Ill. 492.) If the words "heirs-at-law of Gilbert Hubbard," as used in the will, refer to those who would answer that description at the time of his death and not to a class answering that description at some time subsequent to his death, this case is primarily one for the application of the rule. The situation is not affected, so far as the application of the rule is concerned, by the provision in the will for intervening life estates between the life es-

tate of Gilbert Hubbard, Sr., and the equitable estate in remainder in his heirs-at-law. Under the rule in *Shelley's case,* if an estate for life is granted by any instrument and in the same instrument a remainder is limited, either mediately or immediately, to the heirs of the life tenant, the life tenant takes the remainder as well as the life estate. So where there is a limitation to one for life and then to another for life, with remainder in fee to the heirs of the first life tenant, the estate in remainder vests at once in the first life tenant. *Bails* v. *Davis,* 241 Ill. 536.

A proper construction of the will itself will determine whether the rule in *Shelley's case* applies. If the words "heirs-at-law of Gilbert Hubbard" were used as embracing the entire line of inheritable blood and were designed to make Gilbert Hubbard, Sr., the stock of descent, and were not used to refer to such persons as would answer the description of his heirs-at-law at a time subsequent to and remote from the actual time of his death, then the rule applies. As to the sense in which these words are used,— whether as words of limitation or of purchase,—we must look to the will itself. (*Carpenter* v. *VanOlinder,* 127 Ill. 42.) It is frequently the case that the words "heirs-at-law" are not used in their technical sense but are used to designate a more restricted class than heirs generally. There is, however, always a strong legal presumption that the word "heirs" is used in its technical sense, as denoting the whole of the indefinite line of inheritable succession. In *Winter* v. *Dibble,* 251 Ill. 200, in discussing the rule in *Shelley's case,* we said: "This is a rule of law and not of construction, and the use of the word 'heirs,' unless it clearly appears from the instrument to have been used in a sense different from its strict legal meaning, is conclusive of the intention. * * * Whenever it is made to appear by the language of the instrument that the words of inheritance were not used according to their legal import, to include the whole line of inheritable blood of the ancestor

and to make him the stock of descent, but have been used in a restrictive and untechnical sense, to designate individuals to whom a distinct estate is given and from whom, as its origin, the descent is thereafter to be derived, the rule will be excluded." This is only one of many similar expressions which might be quoted as stating the doctrine that unless it clearly appears that the word "heirs" has been used in an unusual sense it will be given its technical meaning. In construing this will we must therefore bear in mind that primarily the words "heirs-at-law of Gilbert Hubbard" mean those persons who will answer that description at the time of his death, and that this meaning must be given those words unless it clearly appears, from the whole instrument, that they were used to designate those who would have answered that description if Gilbert Hubbard, Sr., had died at the period of distribution.

The guardian *ad litem* contends that a significant fact in determining the meaning with which these words were used is that a life estate is first given the husband, Gilbert Hubbard, Sr., and life estates are then given the only children of the testatrix, who were also the only children of Gilbert Hubbard, Sr. In this connection he relies strongly upon *Johnson* v. *Askey,* 190 Ill. 58, and *Bond* v. *Moore,* 236 id. 576. In each of those cases a life estate was given to the sole heir of the testator, with remainder to the testator's heirs-at-law. There is a striking difference between the wills involved in those cases and the one under consideration. Here the testatrix, after providing for a life estate in her husband and for life estates in her children, did not devise the remainder to her own heirs-at-law but to the heirs-at-law of a living person,—her husband. It must be borne in mind that the situation existing at the death of Gilbert Hubbard, Sr., has no bearing upon nor anything whatever to do with a proper construction of this will. This will speaks from the death of the testatrix and must be construed as speaking from that time. While the heirs-

at-law of the testatrix were absolutely determined at the time of her death, it was by no means determinable at that time who the heirs-at-law of Gilbert Hubbard, Sr., would be at the time of his death. It could not be foretold at that time whether Gilbert Hubbard would survive any or all of his children; neither could it be foretold whether, if he had pre-deceased all three of the children named in the will, they would constitute the whole of his heirs-at-law. It was possible that he might re-marry after the death of the testatrix and die leaving other children than those named in this will. The doctrine of construction applied in *Johnson* v. *Askey, supra,* and *Bond* v. *Moore, supra,* is therefore not applicable to this will. A case more nearly in point, and one which presents a more proper basis for the determination of the meaning of the words as used in this will, is *Kellett* v. *Shepard,* 139 Ill. 433, where the life tenant, although an heir of the testator, was not the only heir, as was the case in *Johnson* v. *Askey* and *Bond* v. *Moore, supra.* In that case the testator gave a life estate to his daughter in one-half of the residue of his estate, with remainder to her child or children should she have any, and in case she died leaving no issue, to the testator's heirs-at-law. The other half of the residue he devised to his son. The son died intestate and without issue, subsequent to the death of his father. The daughter thereafter died, also without issue, and it was held that the heirs-at-law who were to take the share of the daughter after her death without issue were the son and daughter of the testator, and that on the death of the son his half interest in the remainder devised to his sister descended one-third to her and two-thirds to his mother, and upon the sister's death her whole interest descended to the mother, so that the mother, by descent from the son and daughter, took the whole of the remainder of the estate devised to the daughter.

The fact that spendthrift clauses were contained in the will in connection with the devises of life estates to the

children of the testatrix affords no basis for construing the words "heirs-at-law" to mean other than the class who would answer that description upon the death of Gilbert Hubbard, Sr. While the will provides first for a life estate in Gilbert Hubbard, Sr., and thereafter for life estates in each of the three children of the testatrix, this does not clearly indicate that the testatrix contemplated the death of her husband before that of her three children and that she meant thereby to exclude them as heirs-at-law of her husband. It is possible that by these provisions and by the addition of the spendthrift trusts in said clause 5 she had in mind to insure to each of her children the absolute enjoyment of a life interest in her estate notwithstanding any disposition her husband might make of the equitable interest in remainder.

It is also urged that the fact that the testatrix provided for distribution of part of the principal to the two sons under certain conditions is indicative of her intention to exclude her children as heirs-at-law of Gilbert Hubbard, Sr. We see no difference, in principle, between this situation and that presented in *Kellett v. Shepard, supra.* The special provision for the sons would not affect the application of the rule in *Shelley's case,* as it is not essential to the application of the rule that the estate of the ancestor and the estate of the heirs be of the same quantity. *Bails v. Davis, supra.*

It is finally insisted that the language used in the will, "but this trust shall not continue longer than until the decease of the last survivor of my children, when the said estate, and all accumulations thereof, shall forthwith vest in the heirs-at-law of my husband, Gilbert Hubbard," is conclusive that the testatrix used the words "heirs-at-law" as referring to a class answering that description at the time of the death of the survivor of her three children, which, it is assumed, would be subsequent to the death of Gilbert Hubbard, Sr. No significance can well be given

to the devise of all accumulations of the estate to the re-mainder-men, as there was no trust for accumulations. As counsel for appellant suggests, the word "accumulations," with reference to the ultimate gift to the heirs-at-law, "seems to have been merely the draughtsman's love for the excessive use of language." The words, "when the said estate * . *. * shall forthwith vest in the heirs-at-law of my husband," do not clearly indicate that any other class is referred to than those who would answer that descrip-tion at the time of the death of Gilbert Hubbard, Sr. They undoubtedly refer to the time when the remainder-men shall come into the enjoyment of the estate and re-ceive its benefits.

There is nothing in the will, when examined as a whole, to indicate that the words "heirs-at-law" were employed in any unusual sense. These words having been used in their technical sense, the rule in *Shelley's case* applies, and Gil-bert Hubbard, Sr., was given by the will not only a life estate but also the equitable estate in remainder.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE VICKERS, dissenting:

I do not concur with the majority opinion in so far as it holds that the rule in *Shelley's case* has application to the situation presented by this record. The fundamental rule to be observed in the construction of wills is to so construe the instrument as to give effect to the intention of the maker of the will. This rule, in my opinion, is erroneously made to give way in order to apply the rule in *Shelley's case*. It is held that the words "heirs-at-law of Gilbert Hubbard" mean those persons who at the time of his death answered the description of his heirs-at-law. If this be the correct interpretation of the will then the application of the rule in

*Shelley's case* is not improperly made, but I am of the opinion that there is in the context of this will language which clearly indicates that the words "heirs-at-law" cannot be given their technical meaning and held to include those persons who at the death of Gilbert Hubbard answered that description. The language of the will clearly indicates that the testatrix did not intend that the estate in remainder should vest, under clause 3 of the will, until after the death of the last survivor of her children. The language in said paragraph which to my mind conclusively shows this intention is as follows: "But this trust shall not continue longer than until the decease of the last survivor of my children, *when* the said estate, and all accumulations thereof, shall *forthwith* vest in the heirs-at-law of my husband, Gilbert Hubbard, unless," etc. The word "when," although used as a conjunction, retains its adverbial sense of time and qualifies the dependent clause which it introduces, "the said estate, and all accumulations thereof, shall forthwith vest in the heirs-at-law of my husband, Gilbert Hubbard," and is equivalent to saying, "when the last survivor of my children shall die, then or at that time all of the estate shall vest in the heirs of my husband." Such is the recognized meaning of the word "when." (See Int. Dict.) This interpretation of the will is rendered more certain by the use of the word "forthwith" in the clause of the will under consideration. This word means, at once; immediately. The rule in *Shelley's case* cannot apply to the will before us, in my opinion, since its context clearly shows that the word "heirs" does not refer to those persons who answered that description at the time of the death of the life tenant. *Johnson* v. *Askey,* 190 Ill. 58; *Bond* v. *Moore,* 236 id. 576; *Smith* v. *Winsor,* 239 id. 567; *Ætna Life Ins. Co.* v. *Hoppin,* 249 id. 406; *Winter* v. *Dibble,* 251 id. 200.

The trial court construed the will in such a way as to give appellant the full benefit of all the provisions thereof designed to confer upon her any rights in this estate. There

is not an intimation in any part of the will that appellant shall have any interest other than a life estate. In my opinion she is entitled to nothing more. The decree of the circuit court of Cook county properly disposed of this controversy, and it should be affirmed.