(No. 13628.—Decree affirmed.)

MARJORIE PEACOCK, Appellant, *vs.* WILLIAM J. McCLUS-
KEY, Appellee.

*Opinion filed December 21, 1920—Rehearing denied Feb. 4, 1921.*

1. WILLS—*statement of the rule in Shelley's case.* Where an ancestor takes an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, the word "heirs" describes the extent or quality of the estate conveyed and does not designate the persons who are to take the estate.

2. SAME—*meaning of the word "heirs" in the rule in Shelley's case.* The heirs contemplated by the rule in *Shelley's case* are those of the whole line of inheritable blood, designating those who are to take from generation to generation, and where the word "heirs" is used in a will in an untechnical or limited sense the rule does not apply.

3. SAME—*rule in Shelley's case should not be considered in construing word "heirs" as used in a will.* In construing the word "heirs" as used in a will the rule in *Shelley's case* should not be considered, as it is strictly a rule of law and not a rule of construction, but the intention of the testator must be determined by the application of the fundamental principles of construction.

4. SAME—*technical words should be given technical meaning unless intention is otherwise.* In construing a will words must be given their ordinary meaning, but technical words are presumed to be used according to their technical meaning and will be given that meaning unless it clearly appears that they were not used in that sense.

5. SAME—*word "heirs" is presumed to have been used in technical sense but its meaning is not fixed.* There is a strong legal presumption that the word "heirs" in a will is used in its technical sense, as denoting the indefinite line of inheritable succession; but the word may mean children, or where there are no children it may mean some other class of heirs less than the whole line, if the context of the entire will plainly shows such to have been the intention of the testator.

6. SAME—*word "heirs" is generally used as word of limitation.* The word "heirs" is generally a word of limitation and is not to be construed as a word of purchase unless there are other controlling words showing such intention by the person using it, and if it is used as a word of limitation its effect is to mark out the estate granted.

7. SAME—*later of two repugnant clauses must prevail.* If there is any repugnancy between two clauses in a will the later expression of the testator must prevail.

8. SAME—*when life tenant takes the fee under rule in Shelley's case.* A devise of a life estate in land to the son of the testatrix and at his death the land to be distributed "among his heirs according to the laws of this State," passes the fee to the son under the rule in *Shelley's case,* notwithstanding the testatrix by a preceding clause gave to her husband ten dollars in satisfaction of dower and all other claims, as such provision does not indicate an intention to exclude the husband as an "heir" of his son if the son died without issue.

APPEAL from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding.

T. W. HOOPES, and R. W. JOHNSON, for appellant.

HOGAN & REESE, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellant, Marjorie Peacock, filed her bill in the circuit court of Christian county asking that the will of her grandmother, Ann M. Johnson, be construed and that her rights under the will be determined and declared. The chancellor sustained a general demurrer to the bill and dismissed the bill for want of equity. This appeal is prosecuted to review that decree.

By the third clause of her will testatrix made the following disposition of her real estate:

"*Third*—I give, devise and bequeath unto my son, Edward G. Johnson, the following tract of land, situated in Christian county, Illinois, [describing it,] to have and enjoy the use thereof during his natural life and at his death to be distributed among his heirs according to the laws of this State."

Construing this clause alone, Edward G. Johnson was given a life estate and under the rule in *Shelley's case* a remainder in fee in the lands devised. (*Fowler* v. *Black,*

136 Ill. 363; *Vangieson* v. *Henderson,* 150 id. 119; *Wilson*
v. *Harrold,* 288 id. 388; *DuBois* v. *Judy,* 291 id. 340.)
That rule is firmly established in this State as a rule of
property. In *Baker* v. *Scott,* 62 Ill. 86, the first and lead-
ing case on the subject in this State, the rule is stated to
be: "Where the ancestor takes an estate of freehold and
in the same gift or conveyance an estate is limited, either
mediately or immediately, to his heirs, either in fee or in
tail, the heirs are words of limitation of the estate and not
words of purchase." The word "limitation," as used in
this rule, must be understood not in the sense of restriction
but as a word describing the extent or quality of the es-
tate conveyed, and "purchase" as any means of acquiring
property other than by descent. With this understanding
of the meaning of the terms "limitation" and "purchase,"
the rule announced in *Shelley's case* would read: When the
ancestor by any gift or conveyance takes an estate of free-
hold and in the same gift or conveyance an estate is lim-
ited, either mediately or immediately, to his heirs in fee or
in tail, the heirs are words describing the extent or quality
of the estate conveyed and not words designating the per-
sons who are to take it. (24 R. C. L. 892.) Hayes states
the rule thus: "The rule in *Shelley's case* says, in sub-
stance, that if an estate of freehold be limited to A with
remainder to his heirs, general or special, the remainder,
although importing an independent gift to the heirs as orig-
inal takers, shall confer the inheritance on A, the ancestor."
(1 Hayes on Conveyancing,—5th ed.—542.)

Appellant concedes that, construing clause 3 alone, the
rule in *Shelley's case* applies, but she contends that testa-
trix did not use the word "heirs" in the third clause as de-
scriptive of all possible heirs of Edward G. Johnson, but
that she used the word "heirs" in a non-technical sense, as
descriptive of a class less extensive than that designated by
law, and she relies for this construction upon the language
used in clause 2 of the will, which provides:

"*Second*—To my beloved husband, Joseph W. Johnson, I have given the greater part of a life of devotion and service, and knowing that he shared with me the desire to provide for our children in case he survives me, I give to him ten dollars, which I desire he shall take in satisfaction of dower and all other claims, of whatsoever character, against the real estate conveyed in this will."

The contention is that testatrix did not intend her husband to constitute one of the class described in the third clause as remainder-men, and that the word "heirs," as used in the third clause, meant the heirs of Edward G. Johnson, except his father.

Heirs contemplated by the rule in *Shelley's case* are those of the whole line of inheritable blood, designating those who are to take from generation to generation. (Kales on Estates and Future Interests,—2d ed.—sec. 414; 24 R. C. L. 892; *DuBois* v. *Judy, supra.*) If the word "heirs" was used by the testatrix in the untechnical or limited sense, as contended by appellant, the rule does not apply. In determining the sense in which testatrix used the word "heirs" we must dismiss from our minds all reference to the rule in *Shelley's case,* for it is strictly a rule of law and in no sense a rule of construction. (1 Fearne on Remainders, 188; Kales on Estates and Future Interests,—2d ed.—sec. 441; *Winter* v. *Dibble,* 251 Ill. 200.) Recurring, therefore, to the fundamental principles for the construction of a will, we must determine the testatrix's intention, for such intention must govern. (*Munie* v. *Gruenewald,* 289 Ill. 468.) In determining that intention, words must be given their ordinary meaning. Technical words are presumed to be used according to their technical meaning, and will be given that meaning unless it clearly appears that they were not used in that sense. There is always a strong legal presumption that the word "heirs," when used, is used in its technical sense, as denoting the whole of the indefinite line of inheritable succession. (*Car-*

*penter* v. *Hubbard,* 263 Ill. 571; . *DuBois* v. *Judy, supra.*)
On the other hand, it has been frequently held by this court
that the word "heirs" in a will does not necessarily have a
fixed meaning. It may mean children, or where there are
no children it may mean some other class of heirs less than
the whole line, if the context of the entire will plainly shows
such to have been the purpose of the testator. (*Smith* v.
*Winsor,* 239 Ill. 567; *McGinnis* v. *Campbell,* 274 id. 82.)
The word "heirs" is generally a word of limitation, and is
not to be construed as a word of purchase unless there are
other controlling words showing such intention by the per-
son using it, and if it is used as a word of limitation its
effect is to mark out the estate granted. (*DuBois* v. *Judy,
supra.*) If there is any repugnancy between the second and
third clauses of this will, the third clause, being regarded
as the later expression of the testatrix, must prevail. (*Gris-
wold* v. *Hicks,* 132 Ill. 494; *Harris* v. *Ferguy,* 207 id. 534.)
Applying these well established rules and giving considera-
tion to the whole will, we are convinced that testatrix did
not intend that her husband should be deprived of his rights
as an heir of her son if the son died without issue. Hav-
ing determined that testatrix used the word "heirs" in its
technical sense, then by the use of the term she brings the
devise within the rule in *Shelley's case,* and the court must
apply the rule in determining the estate devised.

Appellant is the daughter and only heir-at-law of Ed-
ward G. Johnson. Several years after the death of his
mother Edward G. Johnson conveyed by quit-claim deed
the land devised under clause 3 of the will in question to
H. B. Grider, and appellee claims title by *mesne* convey-
ances from Grider. Edward G. Johnson died in November,
1918, and appellant contends that as his only heir-at-law
she is vested, under the gift over in the third clause of
testatrix's will, with the fee simple title to the real estate
in question. From what we have hereinbefore said it will
be seen that this contention cannot be sustained.

The chancellor properly held that appellant had no interest in the real estate in question and properly dismissed the bill for want of equity. The decree of the circuit court is therefore affirmed.

*Decree affirmed.*