(No. 14288.—Decree affirmed.)
MOLLIE H. KAUP *et al.* Appellants, *vs.* NANCY A.
WEATHERS *et al.* Appellees.

*Opinion filed April 19, 1922.*

1. WILLS—*meaning of word "heirs," in legal sense.*   Heirs, in the legal meaning of the term, are those persons upon whom the law at the death of the ancestor casts the inheritance, including the whole line of inheritable blood.

2. SAME—*operation of the rule in Shelley's case.*   Where there is a gift of a life estate with remainder in fee to the devisee's heirs as a class, without reference to individuals or without attaching any condition to the devise, by operation of the rule in *Shelley's case* the fee so given to the heirs vests in the life tenant, without regard to the intention of the testator.

3. SAME—*use of technical words of limitation creates presumption of intention to take by descent.*   In the use of technical words of limitation a strong presumption arises of an intention that the remainder-man shall take by descent and not by purchase, and while such presumption can be overcome it must be by evidence of a contrary intent so clear as to leave no reasonable doubt.

4. SAME—*the word "heirs" is presumed to be used in technical sense.*   While the word "heirs" may be used by a testator in other than its technical sense, it is presumed to be used according to the technical sense and will be given that meaning unless it clearly appears that it is not so used.

5. SAME—*general rule as to effect of words of limitation superadded to words of procreation in devise of remainder.*   Superadded words of limitation, when engrafted on words of procreation, do not operate to turn such words into words of purchase unless the superadded words denote a different species of heirs than that described by the first words, thus showing an intent to break the ordinary line of descent from the first taker.

6. SAME—*when word "heirs" is used as a word of limitation.*
The word "heirs" is used as a word of limitation when not used
to describe individuals of a limited number but to designate heirs
generally or a whole line of heirs in succession from generation
to generation.

7. SAME—*when the rule in Shelley's case applies.* The rule in
*Shelley's case* applies to a devise to "the legal heirs" of a life ten-
ant "and their heirs and assigns forever," where there is nothing
in the will to indicate that the testator has used the word "heirs"
in any other than its technical sense. (*Ætna Life Ins. Co.* v. *Hop-
pin,* 249 Ill. 406, distinguished.)

APPEAL from the Circuit Court of Shelby county; the
Hon. THOMAS M. JETT, Judge, presiding.

JEFFRIES & CORUM, and LANE, DRYER & BROWN, for
appellants.

WALTER C. HEADEN, WHITAKER, WARD & PUGH, and
W. C. & W. L. KELLEY, for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

This is a bill for partition filed by appellants, cousins of
William A. Earp, deceased, claiming an interest in the land
involved as heirs of Earp, who took, as they claim, a life
estate in said land under the will of Priscilla B. Earp, de-
ceased. Earp died testate, and by his will certain of the
appellees were made legatees thereunder. He left surviving
no widow, children or descendants of a child, no father or
mother, his only heirs being the complainants, described as
cousins. By his will he directed the sale of said lands and
the distribution of the proceeds among numerous named
legatees. The question involved is as to the character of
estate which Earp had in the property sought to be parti-
tioned. Appellants claim that he had but a life interest
therein, and that they, as his heirs, have the remainder in
fee. Appellees claim that he had the fee to the land, and
that appellants, by reason of his will otherwise disposing
of the property, have no interest therein.

The character of the estate held by William A. Earp is to be determined by the construction of the second clause of the will of Priscilla B. Earp. That clause is as follows: "I give, devise and bequeath to my son, William A. Earp, all my real estate of every kind and description, which comprises my farm and my homestead, to have and to hold the said real estate, together with the rents, issues and profits thereof, unto the said William A. Earp for and during the term of his natural life, and at his death said real estate shall descend to and become the property in fee simple of the legal heirs of the said William A. Earp, and their heirs and assigns forever."

In the construction of this clause of the will the question to be determined is whether or not the rule in *Shelley's case* applies to the language used therein. Appellants contend that it does not, and assign as a reason for such contention that the superadded words, "and their heirs and assigns," following the words "legal heirs of the said William A. Earp," show that the word "heirs" is not to be taken in its unrestricted sense as being the description of an indefinite line of inheritance, but rather as those who are to take on the death of Earp as a new stock of descent.

The rule in *Shelley's case* is a rule of property and not one of construction. It has been defined as follows: "When the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, either in fee or in tail, 'the heirs' are words describing the extent and quality of the estate conveyed, and not words designating who are to take it." 1 Hays on Conveyancing,—5th ed.—542; *Peacock* v. *McCluskey*, 296 Ill. 87.

Appellants concede that the words "legal heirs of the said William A. Earp," standing alone, would bring this devise clearly within the rule in *Shelley's case*, but they contend that the words "and their heirs and assigns" are a limitation as to who is to take, and indicate that the words

"legal heirs" are used in other than their technical sense.
A testator may use the word "heirs" in the sense of chil-
dren, or the language of the instrument may indicate that
the words of inheritance are not used according to the legal
import, to include the whole line of inheritable blood of
the ancestor as a stock of descent, but have been used in
a restricted and untechnical sense to designate individuals
to whom a distinct estate is given, and from whom, as its
origin, the descent is thereafter to be derived. (*DuBois* v.
*Judy,* 291 Ill. 340.) "Heirs," in the legal meaning of the
term, are "those persons, whoever they may be, upon whom
the law at the death of the ancestor would cast the inher-
itance, thus including all possible heirs to take in succession
from generation to generation under the name of heirs of
the ancestor." *Fowler* v. *Black,* 136 Ill. 363.

Under the operation of the rule in *Shelley's case,* where
there is a gift of a life estate to the ancestor with remain-
der in fee to his heirs as a class, without reference to in-
dividuals or without attaching any condition to the devise,
the fee thus given to the heirs by operation of the rule vests
in the life tenant, and he is thus given the fee to the prop-
erty, without regard to what the intention of the testator
may have been as to the estate to be granted or devised to
such ancestor. *Carpenter* v. *Hubbard,* 263 Ill. 571; *Win-
ter* v. *Dibble,* 251 id. 200; *Bails* v. *Davis,* 241 id. 536.

No case appears to have been before this court in which
the exact language herein used is to be found,—that is,
where the word "heirs," used as a word of limitation and
meaning heirs in general, has been followed by the super-
added words, "heirs and assigns," as herein used.

Appellants rely upon the case of *Ætna Life Ins. Co.* v.
*Hoppin,* 249 Ill. 406, in support of their contention that
the rule in *Shelley's case* does not apply to the devise in
this will. That case is to be distinguished from the case
at bar in that there the devise, after giving a life estate to
Franklin and Sarah Hoppin, provided, "and at the death

of the survivor of them, to the heirs of the body of Sarah Hoppin, their heirs and assigns." It was held that the remainder being to the heirs of the body was not a grant to the general heirs of the ancestor but to a restricted class, and that "heirs of the body" were not words of limitation denoting the extent or character of the estate granted to the first taker, but were words of purchase descriptive of the persons who were to take the remainder upon the termination of the life estate, the holding being based upon the position that section 6 of the Conveyance act in abolishing estates tail likewise abolished the rule in *Shelley's case* as applied to such estates,—citing in support of that position *Baker* v. *Scott*, 62 Ill. 86, and *Butler* v. *Huestis*, 68 id. 594. It is to be seen at the outset that the distinction between the *Hoppin case* and the case at bar is fundamental, in that the devise in the former was made to a restricted class denoting certain individuals,—not to the whole line of inheritable blood,—who were to take, while in the instant case it is conceded that the words "legal heirs of the said William A. Earp" indicate the whole line of inheritable blood. No other conclusion, therefore, could have been reached in the *Hoppin case*.

While this precise language has not been before this court it has been before the courts of other jurisdictions in this country. In *Schoonmaker* v. *Sheeley*, 3 Denio, 485, the devise was to the son of the testatrix "during his natural life and after his death to his heirs and their heirs and assigns forever." It was there held that the word "heirs," as first used, was a word of limitation, and that the son, by force of the rule in *Shelley's case*, took the premises in fee simple, and that the superadded words of limitation, "and their heirs and assigns forever," did not take the case out of the operation of the rule. In that case numerous English cases are reviewed. The decision in that case is based on the reasoning that since the superadded words of limitation, "and their heirs and assigns," do not in any way

add to or change the direction of the estate but leave it to descend to the heirs general of the ancestor in the same manner as if the superadded words had not been inserted, such words do not have the effect of taking the case out of the operation of the rule,—again drawing the distinction existing between this case and the *Hoppin case.*

In *Physick's Appeal,* 50 Pa. 155, the will made a devise to the ancestor for life, with remainder to his "right heirs" and their heirs, executors, administrators and assigns. It was there held that the devise was within the rule in *Shelley's case;* that there was nothing in the will to show that the testator did not use the words of limitation, "right heirs," in their proper sense, except the superadded words of limitation, and that such words were not sufficient. The test is there declared to be whether or not in the gift of the remainder the testator used the term "right heirs" in its legal and ordinary sense or as descriptive of certain persons and to indicate a root of new succession  It is there said that in the use of the technical words of limitation a strong presumption arises of an intention that the remainder-man shall take by descent and not by purchase; that while such presumption can be overcome, it must be by evidence of a contrary intent so clear as to leave no reasonable doubt. To the same effect is *McCann* v. *McCann,* 197 Pa. 452.

In *Andrews* v. *Lowthrop,* 17 R. I. 60, the language of the devise was practically the same as in the case at bar, and the rule in *Shelley's case* was there held to apply.

In *DeVaughn* v. *Hutchison,* 165 U. S. 566, the devise was to "Martha Ann for life and at her decease to her heirs begotten of her body and to their heirs and assigns." It was there held that while the word "heirs" includes persons in all generations belonging to the class designated by the law as heirs and is a word of limitation, yet where, as in that case, the devise was to the ancestor for life and at her decease to her heirs begotten of her body, such a devise

was to a restricted class, and that such limitation showed that it was the intention of the testator that the children of Martha Ann should become the root of a new succession and take as purchasers and not as heirs.

In *Archer's case,* 1 Coke, 66*b,* the estate was devised to Robert Archer for life and after his death to the next heir male of Robert and to heirs male of the body of such next heir male; and it was held that such devise formed a new stock or root of inheritance in the first heir male of Robert, excluding all other issue male of Robert from the inheritance. That case, it is seen, does not hold that had the first limitation been to the heirs general of the testator's son Robert the rule in *Shelley's case* would not have applied. In fact, the reasoning in the case supports the contrary view.

While the word "heirs" may be used by the testator in other than the technical sense, it has been many times held by this court that it is presumed to be used according to the technical sense, and will be given that meaning unless it clearly appears that it is not used in that sense. (*Peacock* v. *McCluskey, supra; Carpenter* v. *Hubbard, supra; Du-Bois* v. *Judy, supra; Sellers* v. *Rike,* 292 Ill. 468.) The rule, supported by reason and authority, may therefore be said to be, that superadded words of limitation, when engrafted on words of procreation, do not operate to turn such words into words of purchase unless the superadded words denote a different species of heirs than that described by the first words, thus showing an intent to break the ordinary line of descent from the first taker. The word "heirs" has repeatedly been held to be a word of limitation where not used to describe individuals of a limited number but to designate heirs generally or a whole line of heirs in succession from generation to generation. (*Carpenter* v. *Van-Olinder,* 127 Ill. 42; *Ryan* v. *Allen,* 120 id. 648.) There is nothing in this will to indicate that the line of inheritable succession is to be changed by the use of the superadded words, "their heirs and assigns." As was said by

this court in *Winter* v. *Dibble, supra:* "Words added can not be said to qualify an expression if the expression means the same thing with the words added as without."

We are of the opinion that the devise was to William A. Earp and his heirs without qualification and that a fee in the estate was devised to him. (*Hageman* v. *Hageman,* 129 Ill. 164; *Fowler* v. *Black, supra; Ewing* v. *Barnes,* 156 Ill. 61.) The lands therefore passed under the will of Earp and the appellants have no interest therein. The circuit court did not err in so holding.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*